Argued and submitted April 6, the decision of the Court of Appeals reversed and order
of the trial court affirmed June 13, 1989

STATE OF OREGON,
*Petitioner on Review,*

*v.*

JOHN MICHAEL ZYBACH,
*Respondent on Review.*

(CC 10-86-02070; CA A42508; SC S35751)

775 P2d 318

Thomas H. Denney, Assistant Attorney General, Salem,

argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Mary Reese, Salem, argued the cause for respondent on review. With her were Gary D. Babcock, Public Defender, and Stephen J. Williams, Deputy Public Defender, Salem.

JONES, J.

### JONES, J.

The issue in this case is whether evidence of encounters with a child victim by an adult defendant after an alleged rape occurred was admissible. The trial court said yes. The Court of Appeals said no. *State v. Zybach,* 93 Or App 218, 761 P2d 1334 (1988). We reverse the decision of the Court of Appeals.

The victim, then a 13-year-old girl, first met defendant, then age 30, while he was working in her neighborhood in mid-June 1985. After a few days, defendant asked her if she would meet with him. She at first refused, but later in June she encountered defendant at her school. He led her out into an orchard where, after much coaxing and caressing, he had sexual intercourse with her. Defendant told the girl, who had just turned 13, not to worry, that he loved her, and that he was "fixed." She confided in her girl friend and they agreed to keep the affair a secret. The victim testified that she kept it a secret "because I was scared that he might do something if I told," and "I didn't want people to know what happened. I don't know what people might think of me at school and things. I didn't want people to think of me any different, like, at school. I didn't want them to know."

The evidence at issue in the motion to suppress is as follows: On July 4, 1985, the night before the victim was leaving to visit Germany, she was watching fireworks in her neighborhood when defendant approached her and again tried to coax her to a clandestine area, this time a corn field. Before reaching the field, they stopped between two houses where defendant attempted to have the child touch his penis. She testified that defendant said he wanted to make love to her again before she left. She refused and left him when some bicyclists rode by.

The victim testified that later that same evening defendant came to her open bedroom window. She told him to leave and shut the window on him.

On August 4, 1985, the day after the victim returned home from Germany, defendant tried to coax her into meeting him at night at the school and, in a neighborhood cul-de-sac, tried to kiss her at least once. She resisted. She testified that during the next months he continued (at least four times) to

come to her bedroom window at night against her wishes. She finally asked her mother for a window blind to help keep him away. Although the mother knew that defendant was bothering the victim at their home, she had not been told of the previous sexual encounter.

In March 1986, after defendant once again tried to talk the victim into meeting him at school at night, she and her girl friend decided to reveal the closely held secret in order to stop his repeated unwanted advances toward her. They reported defendant's actions to her girl friend's parents, who in turn reported the acts to the police.

■ The Court of Appeals held that none of this evidence was admissible because OEC 404(2) prohibits propensity evidence of character. We agree, although we reject the Court of Appeals' statement that OEC 404(2) should be construed "narrowly in cases involving sex crimes." 93 Or App at 221. The rule excludes evidence of character, particularly evidence concerning propensity to commit a certain type of crime—be it murder, rape, robbery or otherwise. The rule is not "wide or narrow" depending on the crime.

Although the state offered the evidence to show the special amorous interest in the victim by defendant, the state also offered the evidence of the encounters between defendant and the victim as being relevant under OEC 401 to prove why the victim delayed reporting the crime. OEC 404(3) expressly provides that

> "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, *such as* proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.)

We stated in *State v. Johns*, 301 Or 535, 548, 725 P2d 312 (1986), that the listed exceptions are illustrations, not limitations. "[S]uch as" means "[f]or example. Of the stated or implied kind or degree; similar; like." American Heritage Dictionary 1285 (1978). The evidence may be admissible on other than the listed grounds.

■ In this case, although the evidence was not admissible

to show that defendant had a propensity to have sexual intercourse or similar contact with minor girls, it was relevant to show why the child had not reported the original sexual assault. This is a type of uncharged misconduct evidence admissible under OEC 404(3), even though not included in the specific illustrations. In addition, defendant's statement on July 4, 1985, that he wanted to make love to the girl *again* constituted an admission that he had done so before.

The repeated association between the pursuer and the pursued was directly relevant to demonstrate why, having failed to complain about the initial sex act, the victim reported it when defendant did not desist from pestering her. Without the evidence of the ongoing relationship between the two, a jury deprived of this evidence would hear that in June 1985 the victim allegedly had intercourse with defendant but did not report it until March of the following year. The victim was properly allowed to testify to facts from which a jury could infer reasons for the delayed reporting.

■      The Court of Appeals miscast the type of testimony as rehabilitation of the victim's testimony before any impeachment. It was not. Her testimony of the repeated contacts with defendant was admissible in the state's case-in-chief under its obligation to prove the charge beyond a reasonable doubt.

The state's first witness was Oregon State Police Trooper James Botwinis. The first question put to him by the prosecution was the date he started working on this case, March 2, 1986, some nine months after the alleged initial assault. The state was in no position to withhold from the court or the jury that there had been a nine-month delay in reporting this crime. In order to develop credibility with the court and, particularly, the jury, it was permissible for the state to bring out "up front" the delayed reporting. To require the state to mask or withhold this information until brought out by the defense on cross-examination would have subjected the state to charges and arguments that the state was withholding valuable information from the jury that was only brought out by the defense. It would be unrealistic to require the state to restrict its case-in-chief to the testimony of the child as to what occurred in June of 1985 and to make it wait until after the predictable cross-examination about the delay

before being allowed to explain the reasons for the delayed reporting.

The decision of the Court of Appeals is reversed, and the order of the trial court is affirmed.