Argued and submitted February 27, convictions affirmed; portion of sentence vacated; remanded for resentencing September 11, 1991, State's petition for reconsideration and Barkley's petition for reconsideration denied February 19, both petitions for review pending 1992

# STATE OF OREGON,
*Respondent,*

*v.*

# CRAIG MICHAEL BARKLEY,
*Appellant.*

(C 88-10-36869; CA A62773)

817 P2d 1328

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender, Salem.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant was convicted of three counts of sodomy in the first degree, ORS 163.405, and of one count of rape in the first degree. ORS 163.375. We affirm the convictions and remand for resentencing.

Children's Services Division referred a 10-year-old child to the Child Abuse Response and Evaluation Service (CARES) after the child's mother reported that she suspected that her former husband had raped their daughter. A pediatrician, Dr. Bays, examined the child and found physical evidence to support the mother's suspicions. Bays' assistant, Butler, then interviewed the child, while Bays, police officers and caseworkers from CSD observed the session from behind a one-way mirror. The interview was videotaped. The videotape was played in front of the jury. Defendant assigns error to the admission of various statements his daughter made during the interview.

Only a small portion of the tape records the child's demonstration, through the use of anatomically complete dolls, of her father's sexual conduct with her and her statements describing that conduct. Most of the tape is of the child sniffing scented markers, drawing pictures, complaining of being hungry, and generally expressing anger toward her father. She says that she hates her father and recounts an incident in which her father once told her that he did not love her anymore. She states that he physically abused her. The child also discusses improper touching of her vagina by two other men and makes a brief reference to a bout with head lice.

Defendant claims that introduction of the statements in the videotape was error, because they are inadmissible hearsay. The state relied on OEC 803(4).[1] In *State v.*

---

[1] OEC 803(4) provides:

"The following are not excluded by [OEC 802], even though the declarant is available as a witness:

"* * * * *

"Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause of [*sic*] external source thereof insofar as reasonably pertinent to diagnosis or treatment."

*Logan,* 105 Or App 556, 806 P2d 137, *rev dismissed,* 312 Or 16 (1991), we analyzed statements made in a similar CARES videotape interview and concluded that they satisfied the three elements of OEC 803(4) that the Supreme Court identified in *State v. Moen,* 309 Or 45, 55, 786 P2d 111 (1990). Defendant contends, *inter alia,* that Bays did not rely on the information in the interview to *diagnose* sexual abuse. Bays testified that she made the diagnosis on the basis of physiological observations obtained *before* the interview. Defendant's argument ignores the text of OEC 803(4), which speaks disjunctively of diagnosis *or* treatment. Information acquired in the interview is an important diagnostic tool "in assessing the psychological trauma and recommending appropriate *treatment." State v. Logan, supra,* 105 Or App at 561 (emphasis supplied); *see also State v. Vosika,* 83 Or App 298, 307, 731 P2d 449, *mod* 85 Or App 148, 735 P2d 1273 (1987). Bays relied on the totality of information conveyed in the interview to determine the appropriate treatment for the child. The record supports the court's factual determination that the child was motivated by a desire for medical diagnosis or treatment, that the information in the interview described the general character or the cause of the child's symptoms and that it was reasonably pertinent to diagnosis or treatment. *State v. Moen, supra,* 309 Or at 55; *State v. Logan, supra,* 105 Or App at 560.[2] We also reject defendant's argument that OEC 803(4) precludes the introduction of statements in the form of videotape. *State v. Verley,* 106 Or App 751, 753, 809 P2d 723 (1991).[3]

■      Defendant argues that the introduction of the videotaped statements violated his right of confrontation under the state and federal constitutions.[4] *See California v. Green,* 399 US 149, 158-64, 90 S Ct 1930, 26 L Ed 2d 489 (1970); *State v. Lissy,* 85 Or App 484, 495, 737 P2d 617, *aff'd* 304 Or 455, 747 P2d 345 (1987). Defendant acknowledges that the child testified at trial and was permitted to answer every

---

[2] Defendant's brief contains one sentence in which he argues, in passing, that the statements that were introduced over his objection were not relevant. OEC 401. Whatever the merit of that position, defendant did not develop the argument, and for that reason, we decline to address it.

[3] We express no opinion as to whether OEC 403 would authorize a court to exclude statements in the form of videotape.

[4] Or Const, Art I, § 11; US Const, Amend VI.

question he asked her. Generally, that would end the inquiry. However, he claims that the prosecutor relied on the video-taped presentation of the child's appearance, emotions and general demeanor to show that she was believable. We are not persuaded that defendant lacked an opportunity to confront those characteristics. Difficulty in rebutting the child's pre-trial demeanor, as reflected in the videotape, does not trans-late into an inability to cross-examine. If simultaneous confrontation were the rule, as defendant's argument implies, then no hearsay statement would escape exclusion under confrontation clause analysis. Defendant's rights of confrontation were not violated.

■ Defendant also assigns error to the court's denial of his pretrial motion to exclude evidence that he had physically abused his child prior to the rape and sodomies. The state argues, and we agree, that the evidence was properly admit-ted to explain the child's delay in reporting these crimes. *State v. Zybach,* 308 Or 96, 100, 775 P2d 318 (1989)

■ As part of his sentence, the court ordered defendant to pay $577 as a compensatory fine to compensate the child's mother for wages she lost from time spent in court supporting her daughter. Defendant argues that the court lacked author-ity to order that payment. In imposing punishment for a criminal offense, Oregon courts are "limited strictly to the provisions of the applicable statute." *State v. Cotton,* 240 Or 252, 254, 400 P2d 1022 (1965); *State v. Duncan,* 15 Or App 101, 103, 514 P2d 1367 (1973).

At the sentencing hearing, the state requested, *inter alia,* that the court impose an order "for $577 in compensa-tory — well, not compensatory, but restitution to [the child's mother for her lost wages]." The court ordered the payment, but defendant objected on the ground that it did not come "within the restitution statute." The prosecutor argued that the child's mother was a "victim," because she was the child's "parent or guardian." The prosecutor claimed that the mother's lost wages were "incurred by the criminal conduct of the defendant." The prosecutor then argued:

> "If the court can impose $577 as [a] compensatory fine, again I submit it's appropriate to the mother as she comes within the definition of victim. If you look at [ORS] 137.101, I hope I'm quoting that statute correctly, this court has

authority to order a fine and make that compensatory fine on behalf of the victim.

"And there are other statutes that clearly define the mother of a child who's being included as a victim."

He then framed the specific issue presented in this case:

"I think the only thing that was a little bit different in my mind about this case is we're extending [the scope of the statute] to the mother of the direct victim of the crime, but I submit it's appropriate in that she comes under the definition of 'victim' within the code, and it's not an unreasonable — I think it's perfectly appropriate."

The court then ordered the payment of the compensatory fine over defendant's objection.

ORS 137.101(1) provides, in part:

"Whenever the court imposes a fine as penalty for the commission of a crime resulting in injury for which the person injured by the act constituting the crime has a remedy by civil action, * * * the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case. The clerk shall pay over to the injured victim or victims, as directed in the court's order, moneys paid to the court as compensatory fines under this subsection. This section shall be liberally construed in favor of victims."

Defendant argues first that the court lacked authority to order payment in the form of a compensatory fine, because it did not impose any fine as a penalty under ORS 161.625(1). He is correct. A court must first impose a fine "as penalty" before it may order a defendant to pay any portion of that fine to the clerk of the court in the form of a "compensatory fine." *State v. Lovelace,* 94 Or App 586, 591, 767 P2d 80, *rev den* 307 Or 571 (1989). The reason is simple. ORS 137.101(1) merely provides a mechanism by which a court may require the state to share penalty fines with a class of persons that fall within the statute's scope.

The principal issue before us is whether the child's mother is a member of that class.[5] The state argues that the

---

[5] If we remanded for resentencing on the basis of the court's failure to impose a penalty fine of $577, which it is clearly authorized to do under ORS 161.625(1), the court would then be faced immediately with the issue raised in the text. Consequently, we proceed to resolve that issue.

mother is entitled to share in the compensatory fine, because she is a "victim" as "defined in the [criminal] code." The state draws our attention to two statutes. The first is ORS 131.007, which provides:

> "As used in ORS 40.385 and in ORS chapters 136, 137 and 144, *except as otherwise specifically provided or unless the context requires otherwise,* 'victim' means the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime and includes, in the case of a homicide, a member of the immediate family of the decedent and, in the case of a minor victim, the legal guardian of the minor. In no event shall the criminal defendant be considered a victim." (Emphasis supplied.)

We may assume, *arguendo,* that the child's mother falls within the broad definition of "victim" in ORS 131.007. However, we must next determine whether, in the light of the emphasized proviso, the definition of "victim" applies in ORS 137.101. We conclude that it does not, because ORS 137.103 specifically provides:

> "As used in ORS *137.101* to 137.109, 137.540, 161.675 and 161.685:
>
> "* * * * *
>
> "(4) 'Victim' means any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities."

To be a "victim" under ORS 137.101, a person must have "suffered pecuniary damages." ORS 137.103(2) defines pecuniary damages:

> " 'Pecuniary damages' means all *special damages,* but not general damages, *which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities* and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling." (Emphasis supplied.)

A person has suffered pecuniary damages only if the court determines that that person "could recover" the losses, as special damages, from defendant "in a civil action arising out of the facts or events constituting the defendant's criminal activities." Moreover, the court must determine that the

person suffered the pecuniary damages "as a result of the defendant's criminal activities." ORS 137.103(4). ORS 137.103(1) defines criminal activities:

> " 'Criminal activities' means any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant."

Defendant's criminal activity here was the rape and sodomy of his daughter.

Even if we assume that the child's mother is a "victim," as defined in ORS 137.103(4), the question remains whether she was an "injured" victim, as used in ORS 137.101(1). ORS 137.101(1) directs the clerk of the court

> "to pay over to the *injured* victim or victims, as directed in the court's order, moneys paid to the court as compensatory fines under this subsection." (Emphasis supplied.)

The same subsection authorizes the court to order payment of a compensatory fine only when it

> "imposes a fine as penalty for the commission of a crime resulting in *injury for which the person injured by the act constituting the crime has a remedy* by civil action." (Emphasis supplied.)

Defendant argues that the legislature, by placing the adjective "injured" before "victim," intended to limit the class of persons who may be paid a compensatory fine to "victims," as defined in ORS 137.103(4), who have suffered a direct physical injury by the act constituting the crime. The state argues that ORS 137.101 may be interpreted broadly to expand the class of persons to those who, like the child's mother, have suffered indirect nonphysical injuries by a defendant's criminal acts.

The statutes at issue here are not models of clarity. They could be construed to support either party's argument. To resolve the ambiguity, we look to legislative history to determine legislative intent.

Representative Courtney introduced House Bill 2711 in 1981. In written materials before the relevant subcommittee, he recounted the story of a defendant who had shot another man in the face with a shotgun and blinded him. A Pennsylvania judge had sentenced the defendant to pay the

man $100 a month to compensate him. He testified that the story had "prompted [him] to amend the statutes to allow [Oregon] court[s] to order the defendant to pay the victim general as well as special damages." In its original form, the bill simply changed language in the definition of "pecuniary damages" in ORS 137.103(2) from "all special damages, but not general damages" to "all special damages *and* general damages." (Emphasis supplied.) The measure summary accompanying the bill explained that it would allow the sentencing court to order a defendant "to pay [a] victim general damages as well as special damages as part of [the] judgment in [a] criminal case." Payment would be made from the defendant directly to the victim.

The bill was amended twice before being passed out of the House Judiciary Committee. As amended, the bill restored ORS 137.103(2) to its original form. It also created ORS 137.101 and, for reasons not readily apparent, tied the definition of "victim" in ORS 137.101 to ORS 137.103(4). Representative Courtney explained the amended bill this way:

> "[Unintelligible] wanted to allow [unintelligible] criminal proceedings to allow for general damages and that didn't get very far with this group for some very good reasons. Well, the amendments, in effect, what they do is, if a judge imposes a fine as a penalty for the commission of a crime, and, uh, the person is injured by the criminal act, the judge can order that all of the fine or part of the fine be paid into the clerk of the court to be paid to the individual." House Judiciary Committee Hearing, May 13, 1981, Tape 378, Side A.

Nothing in the testimony before the relevant House and Senate committees indicates that the amendments were intended to expand the class of persons covered by the bill beyond those who suffered direct physical injury by the act constituting the crime. The primary concern was the uncertain fiscal impact the bill would have on revenues raised in collecting penalty fines if judges ordered the money paid to persons covered by the law. To reduce that impact, the amendments limited the scope of the bill to "intentional" crimes and to persons who suffered "serious physical injury." The comments of Representative Courtney and the progression of amendments lead us to conclude that the legislature intended to limit the scope of HB 2711 to those persons who

have suffered direct physical injury, not bystanders who might have suffered psychological harm or pecuniary losses.[6]

ORS 137.101 was amended once more in 1986, when the voters passed the so-called "Victim's Rights Bill" in Ballot Measure 10. The first sentence of ORS 137.101(1), which read "an intentional crime" was changed to read "a crime." The words "serious physical" that preceded "injury" were deleted. *See State v. Lovelace, supra,* 94 Or App at 591. Given the legislative history of ORS 137.101, that change was probably intended to restore what had been lost in the final amendment to the bill. The state points to nothing in Ballot Measure 10 that would fundamentally alter the purpose of ORS 137.101 as it was originally enacted.

The child's mother did not suffer direct physical injury when her daughter was raped and sodomized. Consequently, she was not "the person injured by the act constituting the crime." Only the child was "injured" within the meaning of ORS 137.101(1).[7] The court lacked authority to impose a compensatory fine payable to the child's mother.

Convictions affirmed; portion of sentence ordering compensatory fine vacated; remanded for resentencing.

---

[6] Persons outside the scope of the statute, of course, retain whatever civil remedies they may have. We are concerned here only with the authority of a court in the sentencing phase of a criminal conviction. We are not unmindful of the practical difficulties that would follow if we were to adopt the state's construction of ORS 137.101(1). *See State v. Stalheim,* 275 Or 683, 552 P2d 829 (1976).

[7] We express no opinion about whether the child was a "victim" within the meaning of ORS 137.103(4).