Argued and submitted October 29, 1998, reversed and remanded July 7, 1999

# STATE OF OREGON,
*Appellant,*

*v.*

# NICHOLAS GALLOWAY,
*Respondent.*

(97-0480; CA A100358)

984 P2d 934

Katherine H. Waldo, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Daniel Q. O'Dell, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

**LINDER, J.**

Defendant is charged with rape in the second degree, ORS 163.365, and three counts of sexual abuse in the first degree, ORS 163.427. The state appeals from a pretrial order excluding evidence of statements that defendant's wife made to the victim regarding what would happen if the victim reported the incident to the authorities. We reverse and remand.

The victim, defendant's niece, lived with defendant and his wife from October 1995 until January 1997. The sexual contact allegedly took place between November 1, 1995, and December 24, 1996, when the victim was 11 and 12 years old. The victim disclosed the alleged sexual contact to her aunt, defendant's wife, in January 1997. Later that month, police interviewed the victim, at which point she reported only that defendant had touched her vagina with his hand and had "touched her vaginal area with his penis." In March 1997, the victim was evaluated through the Child Abuse and Response Evaluation Services (CARES) program. In the course of that evaluation she expanded her disclosure, revealing for the first time that defendant once had sexual intercourse with her, and also explaining that there were multiple occasions, rather than just one, on which defendant had touched her vaginal area with his hand.

Defendant filed a pretrial motion seeking to exclude any evidence of what defendant's wife may have told the victim concerning the consequences of the victim's report of the abuse. Defendant's motion urged in general terms that the evidence was irrelevant and unduly prejudicial. At the hearing on the motion, the state advised the court that it intended to introduce evidence that when the victim told defendant's wife that the victim had been molested by defendant, defendant's wife responded by warning the victim that reporting the abuse would ruin defendant's life, would cause the family to lose the farm and to have to live in a car, would result in the victim and her sister being placed in foster homes, would require the victim to take a polygraph, and would mean that the victim might be sent to "Juvie." Defendant argued that those statements collectively were not relevant. Defendant

further asserted that the specific statement regarding a possible polygraph examination would be highly prejudicial. The state, in response, argued that the evidence was relevant to demonstrate why the victim feared reporting the incident and why she did not come forward immediately with all of the details and a full account of the abuse. To preclude any undue prejudice, the state also agreed to omit any reference to any statements about a possible polygraph examination.

The trial court granted defendant's motion to exclude the evidence, ruling that the statements to the victim were not relevant as part of the state's case-in-chief.[1] The court further ruled, however, that if defendant attempted to impeach the witness on the basis of her delay in fully reporting the details of the abuse, then the evidence of what the defendant's wife may have said to the victim would be relevant to rebut that suggestion. The state assigns error to the trial court's exclusion of the evidence, arguing, as it did below, that it is entitled in its case-in-chief to introduce evidence of what defendant's wife told the victim to explain why the victim minimized her initial report of the abuse.[2]

■ ■ Under OEC 401, "[p]roffered evidence is relevant * * * if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more

---

[1] As we have just described, defendant argued at the hearing only that references to polygraph testing should not be admitted on the ground of undue prejudice. In response, the prosecutor agreed to "sanitize" the statements of any such references. The trial court's ruling on the admissibility of the remainder of the statements appears to have been based on relevance only, even though, at one point, the trial court made a passing reference to the prejudicial effect of the statements. In all events, the trial court did not make the findings necessary to support a conclusion that the evidence would be unduly prejudicial and the record discloses nothing before the trial court from which it could have made those findings. *See State v. Lee*, 88 Or App 556, 560-61, 746 P2d 242 (1987) (abuse of discretion to rule evidence inadmissible without adequate findings on prejudice and basis in record for those findings). Nor, on appeal, does defendant argue that the evidence is inadmissible based on undue prejudice. We therefore do not consider that issue further even though, in an exercise of caution, the state argues on appeal that the statements are not inadmissible based on undue prejudice.

[2] The state also argues that the evidence was admissible to prove that defendant's wife was biased. Defendant, in response, contends that the state is raising that argument for the first time on appeal. We agree with defendant. Below, the state argued only that *if* defendant's wife denied making the statements, then the state would produce other witnesses to impeach her on the basis of bias. That differs from arguing that the substance of the wife's testimony—*i.e.*, an acknowledgment that she made the statements—was itself relevant as bias.

probable or less probable than it would be without the evidence." The trial court determines, pursuant to OEC 104 (preliminary questions of admissibility), whether the evidence satisfies that minimum threshold. *State v. Clowes*, 310 Or 686, 692, 801 P2d 789 (1990). We review the trial court's determination as an issue of law. *State v. Sullivan*, 152 Or App 75, 78, 952 P2d 100 (1998). As the Supreme Court only recently clarified:

> "Relevance determinations under OEC 401 * * * can yield only one correct answer; evidence either is relevant or it is not. Under OEC 401, if evidence logically is relevant, a trial court has no discretion to label it as irrelevant."

*State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

■ Here, the trial court viewed the evidence as rehabilitative in nature and thus relevant only if the defense first sought to impeach the victim on the basis of the inconsistencies in her initial and later reports. In so holding, the trial court approached the problem in the wrong way. *State v. Zybach*, 308 Or 96, 775 P2d 318 (1989), is on point. There, the state offered evidence of certain encounters between the defendant and the victim to explain why the victim delayed reporting that defendant had raped her. The trial court admitted the evidence over the defendant's objection that it was relevant only as rehabilitation and therefore should not be placed before the factfinder until the victim was impeached. The Oregon Supreme Court held that the evidence was properly admitted. In so holding, the court observed that to characterize the evidence as "rehabilitative" was to "miscast" it; rather, the challenged evidence was directly relevant "to show why the child had not reported the original sexual assault" and it was "admissible in the state's case-in-chief under its obligation to prove the charge beyond a reasonable doubt." *Id.* at 100.

As *Zybach* recognizes, a party carrying the burden of proof is entitled to address, as part of its affirmative case, inherent weaknesses in its proof that might make its case less believable. That is not a matter of "rehabilitating" a witness; it is a matter of explaining the circumstances fully so that the trier of fact is not left with uncertainties that might

otherwise detract from the strength of the party's case.[3] *Zybach* makes clear that evidence serving that purpose is relevant and, if not inadmissible for other reasons, may be placed before the trier of fact during the party's affirmative case. Moreover, the court observed that, to the extent that such inherent weaknesses in a party's affirmative case also may expose the evidence to attack by the opposing party, the party offering the evidence need not wait until rebuttal to anticipate the attack:

> "To require the state to mask or withhold this information until brought out by the defense on cross-examination would have subjected the state to charges and arguments that the state was withholding valuable information from the jury that was only brought out by the defense. It would be unrealistic to require the state to restrict its case-in-chief to the testimony of the child as to what occurred * * * and to make it wait until after the predictable cross-examination about the delay before being allowed to explain the reasons for the delayed reporting."

*Id.* at 100-01. *See also Sullivan*, 152 Or App at 79-80 ("When defense evidence is predictable, the state may meet that evidence in its case in chief and need not await rebuttal to disprove it."); *State v. Barkley*, 108 Or App 756, 760, 817 P2d 1328 (1991), *aff'd in part on other grounds* 315 Or 420, 846 P2d 390 (1993) (evidence that the defendant physically abused the child before the incidents of sexual abuse were relevant to explain the child's delay in reporting).

---

[3] The state points out that evidentiary weaknesses of that kind are not always brought out by the opposing party either during cross-examination or during the opposing party's case. Rather, because it is sometimes more effective to plant seeds of doubt than to let them germinate, opposing counsel may reserve comment on those weaknesses until closing argument, at which point no response or explanation is possible. That potential scenario underscores that the issue is not one of rehabilitation in response to impeachment, but instead has to do with the quality and thoroughness of the direct proof. Moreover, it is worth observing that even when an opposing party does not seize on such weaknesses, jurors may still identify them and, in the course of their deliberations, may conclude that without an explanation of circumstances that raise questions in the jurors' minds, the party's burden of proof is not satisfied. Leaving jurors to wonder about such matters is, of course, particularly risky where, as in criminal cases, the burden of proof is beyond a reasonable doubt.

Defendant, on appeal, agrees that the state's offered evidence was relevant to explain any minimization or inconsistency in the victim's reporting. However, defendant urges that the state's interest in presenting the evidence was protected adequately by the court's ruling that the state could use the evidence in rebuttal. In particular, defendant argues:

> "[I]n some circumstances, the state should be allowed to 'take the sting' out of bad facts by presenting them in its case in chief. However, the necessity of it doing so is one of degree, depending on the potential harm the evidence presents, and the likelihood that the issue is going to arise."

Defendant contends that the state did not produce enough evidence of the variations between the victim's reports sufficient to make it necessary for the state to present the evidence in its case-in-chief.

There are two problems with defendant's argument. First, it ignores the basis of the trial court's ruling. There was no issue below about the degree of variation between the witness's statements. The reports that the victim gave initially to police and later as part of the CARES evaluation were before the trial court and are a matter of record. The colloquy makes clear that the parties and the trial court alike accepted that there was a significant variation in the reports. The only issue below was whether the evidence was relevant and admissible as part of the state's case-in-chief to explain any inconsistencies or minimization in the reporting. Under *Zybach*, the court's ruling on that point was error.

■ Beyond that, the problem with defendant's argument is that it confuses the relevance of the evidence as part of the state's affirmative case with its relevance for rehabilitative purposes. As *Zybach* holds, evidence of this nature is not relevant only as rehabilitation; it is independently relevant to explain inherent weaknesses in the state's affirmative case, which the state is entitled to do to meet its obligation to prove its case beyond a reasonable doubt. Because the evidence is relevant as part of the state's affirmative proof, the state's ability to present that proof is not, as defendant argues, a matter of degree. The proper inquiry is: "Does the item of evidence even *slightly* increase or decrease the probability of the existence of any material fact in issue? If the item of evidence

affects the balance of probabilities to *any degree*, it is logically relevant." *State v. Gailey*, 301 Or 563, 567, 725 P2d 328 (1986) (emphasis added). OEC 401 "establishes a 'very low threshold' for the admission of evidence." *Titus*, 328 Or at 481. Thus, if evidence has *any* tendency to establish or defeat a material fact in the case, it is relevant. Here, the evidence satisfied that test. Accordingly, the trial court's ruling was error.

Reversed and remanded.