Argued and submitted June 27, motion to dismiss denied; reversed and remanded
December 3, 2008

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

GERARDO REYES PANDURO,
*Defendant-Respondent.*

Hood River County Circuit Court
050229CR; A131833

197 P3d 1111

Kaye E. McDonald, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Bronson D. James, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

In this criminal case, the state appeals from the trial court's denial of its motion *in limine* to admit evidence of defendant's uncharged misconduct. OEC 404(3); ORS 138.060(1)(c). Defendant has moved to dismiss the state's appeal, arguing that his deportation has rendered the case moot and that permitting the state to pursue the appeal will deny him rights to a speedy trial and to counsel. On the merits, defendant asserts that the trial court properly excluded the state's proffered evidence, because it was not relevant to the crimes with which he was charged. We deny defendant's motion to dismiss and reverse.

We first address defendant's motion to dismiss the state's appeal. Defendant was deported from the United States on August 1, 2006; he argues that the state's appeal is moot because it is uncertain whether he will ever return to the United States or be brought to trial. That uncertainty, defendant reasons, will deprive our decision in this case of any "practical effect" on the rights of the parties. Defendant also argues that, because it is uncertain whether the state will extradite him or whether he will return to the United States, he has been deprived of his rights to counsel and to a speedy trial.

Defendant offers no evidence, and none appears in the record before us, to support his contention that the state will not extradite him or that a trial will not occur within a reasonable period of time. Moreover, defendant identifies no action by the state that deprived him of access to counsel; no evidence in the record indicates that defendant is unable to contact his counsel. Accordingly, we reject defendant's right to counsel and speedy trial arguments without further discussion.

The question whether a case is moot is "part of a larger two-part inquiry into whether a case is justiciable." *State v. Lavitsky*, 158 Or App 660, 663, 976 P2d 82 (1999) (citing *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993)). The first step is to determine whether "a case presents a controversy between parties with adverse interests,"

and the second step is to determine whether "the court's decision will have a practical effect on or concerning the rights of the parties." *Id.* Defendant has framed his motion to dismiss under the second step of the justiciability inquiry.

We previously have addressed mootness challenges in deportation cases, and our holding in *Lavitsky* disposes of defendant's mootness challenge here. We held:

> "Regardless of defendant's release, our decision on the merits will still have a real effect on, or concerning, the rights of the parties. The relief the state seeks—a modification of defendant's sentence—is real and concrete, not abstract and hypothetical. That relief, if granted, will, as a matter of law, alter the state's rights and defendant's obligations under the sentence.
>
> "* * * * *
>
> "To be sure, defendant's impending or actual deportation may, as a *practical* matter, render *enforcement* of our decision problematic should we conclude that the trial court erred in sentencing defendant—*viz.*, defendant may no longer be in the country and might never reenter the country. However, we will not base a decision about mootness on *speculation* that a decision on the merits may not have a practical effect."

*Lavitsky*, 158 Or App at 664 (emphasis in original). *See also State v. Mercado-Vasquez*, 166 Or App 15, 21, 998 P2d 743 (2000) (holding same). In this case, the relief that the state seeks—admission of its evidence against defendant—is real and concrete, not abstract or hypothetical and will, as a matter of law, alter the state's rights and defendant's obligations. The possibility exists that defendant may not return to the United States, but to base our determination of mootness on that possibility would be speculative. We decline that invitation. Accordingly, we deny defendant's motion to dismiss, and we turn to the state's assignment of error.

The pertinent facts are procedural and not in dispute. Defendant was charged in a 10-count indictment with sex offenses that he allegedly committed against the victim, his daughter, between March 1996 and August 2005. Before trial, the state moved *in limine* to admit evidence of defendant's uncharged misconduct toward the victim that, it

asserted, was admissible under OEC 404(3).[1] Defendant objected, arguing that the proffered evidence was irrelevant, unfairly prejudicial, or both. Defendant also argued that allowing the state to present in its case-in-chief evidence of his intent was improper, because he contemplated a defense strategy of denying that the acts took place. The trial court took the matter under advisement and issued a letter opinion excluding paragraphs one, three, and seven of the state's proffered evidence and admitting the remaining evidence based on the Supreme Court's decision in *State v. Zybach*, 308 Or 96, 775 P2d 318 (1989). The state now challenges the trial court's exclusion of paragraphs one, three, and seven of the state's proffer.[2]

■       We review the trial court's ruling on the admission of uncharged misconduct evidence for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). For clarity, we separately set out and analyze each of the rejected proffers.

■       Paragraph one of the state's proffered evidence read:

"1)   [The victim in the present case was born on] March 11th, 1987. On or between September 11th, 1997 and March 10th, 1999, when the victim was between 10 1/2 and 11 years old the family lived in a trailer and the victim had her own room. The defendant would use something to open the victim's bedroom door at night because it was locked and he would go inside. Once inside her room the defendant would take off her blankets without saying anything and would look at her in a way in which the victim took as a 'sexual manner.' The victim reports that she remembers this happening about 7 or 8 times."

The trial court explained its decision to exclude the evidence described in paragraph one as follows:

---

[1] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible as evidence to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[2] Defendant also successfully demurred to Counts 2 through 6 and Count 9 of the indictment; the state does not challenge that ruling on appeal.

"As to the issue of other crimes evidence, the Court denies the State's request as to items 1, 3 and 7. The state relies primarily on *State v. Zybach*, 308 Or. 96, [775 P2d 318 (1989),] as a basis for admission of such evidence under 404(3). However, in *Zybach*, all such 'other' acts were subsequent to the alleged crime. That is not true with the evidence proposed in paragraph 1. Further, the claim that the look by Defendant was in a 'sexual manner' is vague and not really an overt act as is the touching or attempted touching which is the basis of the underlying crime. The Court denies admission on relevancy grounds."

The state's theory of admissibility, both in its motion *in limine* and on appeal, is that the evidence in paragraph one was relevant to show, among other things, defendant's sexual intent toward the victim under the five-factor test set out in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986). However, the state also consistently has argued that the evidence in paragraph one was relevant to show that the victim feared defendant because of his repeated attempts to have sexual contact with her. That fear, the state reasons, was relevant to explain the lengthy delay between the beginning of the alleged abuse and the victim's reporting of it.

On appeal, defendant renews his argument that the evidence described in paragraph one was irrelevant to show his intent. Defendant relies primarily on the premise that, because he maintained that the charged acts did not take place, evidence of his intent was irrelevant and, in any event, could not properly be admitted in the state's case-in-chief. Defendant relies on our comment in *State v. Leach*, 169 Or App 530, 534-35, 9 P3d 755 (2000), *rev den*, 332 Or 637 (2001), that "there is a substantial and unresolved question as to whether 'prior bad acts' evidence can ever be admitted as being relevant to intent where * * * the defense is that the charged crime never occurred," to support that proposition. As explained below, we need not reach defendant's argument concerning intent.

Because it is dispositive, we address only the state's argument under *Zybach*. In that case, the Supreme Court addressed the issue whether "evidence of encounters with a child victim * * * after an alleged rape occurred [were] admissible." *Zybach*, 308 Or at 98. The rape was alleged to have

taken place in mid-June 1985, and the victim claimed that the defendant had sought sexual contact with her another six times that year. In March 1986, after the defendant again approached her, the victim reported the incidents to her parents. The defendant was later arrested and charged with the rape alleged to have occurred in mid-June 1985. The court concluded that the evidence of the later encounters "was relevant to show why the child had not reported the original sexual assault. This is a type of uncharged misconduct evidence admissible under OEC 404(3), even though not included in the specific illustrations." *Id.* at 100. The court elaborated:

> "The repeated association between the pursuer and the pursued was directly relevant to demonstrate why, having failed to complain about the initial sex act, the victim reported it when defendant did not desist from pestering her. Without evidence of the ongoing relationship between the two, a jury deprived of this evidence would hear that in June, 1985, the victim allegedly had intercourse with defendant but did not report it until March of the following year. The victim was properly allowed to testify to facts from which a jury could infer reasons for delayed reporting."

*Id.* Thus, the evidence was admissible in the state's case-in-chief in aid of

> "its obligation to prove the charge beyond a reasonable doubt.
>
> "* * * In order to develop credibility with the court and, particularly, the jury, it was permissible for the state to bring out 'up front' the delayed reporting."

*Id.* We further elaborated on that principle in *State v. Galloway*, 161 Or App 536, 540-41, 984 P2d 934 (1999), *rev den*, 330 Or 331 (2000), explaining that admission of such evidence "is a matter of explaining the circumstances fully so that the trier of fact is not left with uncertainties that might otherwise detract from the strength of a party's case."

Defendant makes no effort to distinguish *Zybach*, instead relying entirely on the trial court's determination that the evidence was irrelevant under *Johns*. Regardless

whether the trial court's conclusion in that respect was correct, the state advanced several alternative grounds for the admission of the proffered evidence under OEC 404(3), one of which was to explain the victim's delayed reporting of the abuse.[3] The trial court concluded that the proffer in paragraph one was irrelevant to the victim's delay in reporting because the acts alleged in that paragraph took place *before* defendant's charged conduct, and the acts in *Zybach* occurred "subsequent to the alleged crime." We disagree with that conclusion.

■ Whether uncharged misconduct, evidence of which is offered to explain a victim's delay in reporting, occurred before or after the charged conduct is a distinction without a difference. As we explained in *State v. McKay*, 97 Or App 590, 593, 776 P2d 1316 (1989), *aff'd on other grounds*, 309 Or 305, 787 P2d 479 (1990), "[t]he only distinctions that could be made, such as that the contacts were after the alleged crime in *State v. Zybach, supra*, but were before the alleged crime in this case, are without significance." In this case, the proffered evidence in paragraph one was relevant to explain the victim's delayed reporting of the charged offenses. As the state observes, without such evidence, the trier of fact would be presented with a charge of sexual abuse in the first degree alleged to have occurred between 1996 and 1998 (Count 1), two more counts of the same offense alleged to have occurred between 2001 and 2003 (Counts 7 and 8), and yet a third count alleged to have occurred during August 2005 (Count 10). That is the scenario envisioned by the court in *Zybach*, where, in the absence of explanatory evidence, a jury is deprived of evidence of an "ongoing relationship" between the defendant and the alleged victim. As we said in *State v. Hall*, 108 Or App 12, 17, 814 P2d 172, *rev den*, 312 Or 151 (1991), with particular reference to cases involving, as this case does, minor victims:

> "A victim's relationship to the accused is relevant to explain her conduct. One may react differently to the conduct of a

---

[3] As we noted in *Leach*, "*Johns*'s requirements do not apply to all 'non-propensity' bases for admissibility, including those specifically identified in OEC 404(3). * * * Rather, *Johns*, by its terms, controls only where 'prior bad acts' evidence is offered to prove intent." 169 Or App at 536 (citing *State v. Hampton*, 317 Or 251, 257, 855 P2d 621 (1993)).

stranger than to that of a friend or relative, and what seems natural in one context may seem absurd in another. In cases involving sexual crime against children, the relationship is frequently important in explaining the child's delay in reporting the abuse."

Because the proffered evidence in paragraph one was relevant to explain the victim's delayed reporting, we need not reach the issue identified in *Leach* as to whether *Johns*-type intent evidence is admissible during the state's case-in-chief where a defendant intends to deny that the charged act occurred.

■ Paragraph three of the state's proffered evidence read:

"3) On or between March 11th, 1999 and March 10th, 2001, when the victim was 12 to 13 years old the family still lived in the trailer, but now the victim's bedroom door didn't latch easily and could be opened even if it was locked. The victim described an incident where defendant was caught watching her bathe in the bathroom through a small hole in the wall. The victim reported that her mother caught the defendant doing this and that an argument ensued."

The trial court excluded that evidence because, in its view, "there is no evidence when the victim was informed about being watched by Defendant. Therefore it does not explain any delayed reporting. The Court denies admission on relevancy grounds." Again, we disagree. The excluded evidence gave rise to at least three permissible inferences. First, the evidence could indicate that the victim caught the defendant spying on her; second, it could indicate that she witnessed an argument between her mother and defendant about his actions; and, third, it could indicate that the victim's mother later told her that defendant was spying on her.

The state urges that the evidence was admissible to show defendant's sexual predisposition, thus tending to show intent and motive; that it provided context for the victim's allegations and thus explained her delayed reporting, and also that it showed defendant's "consciousness of guilt," that is, he acted surreptitiously because he knew that his interest

was both sexual and wrong.[4] Defendant reiterates his argument that the evidence was inadmissible under *Johns*.

■        Under OEC 401, proffered evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "If the item of evidence affects the balance of probabilities to any degree, it is logically relevant." *State v. Gailey*, 301 Or 563, 567, 725 P2d 328 (1986). The threshold set by OEC 401 for the admission of evidence is a "very low" one. *Titus*, 328 Or at 481. Again, we conclude that the evidence described in paragraph three—regardless of which of the enumerated inferences a trier of fact might draw from it—was relevant for the nonpropensity purpose of explaining the victim's delayed reporting.

First, if the victim caught the defendant spying on her, the evidence would tend to explain the reason for her delayed reporting for the same reasons outlined in our analysis of the proffer in paragraph one; that is, her fear of defendant, fostered by defendant's repeated misconduct throughout the periods covered in the indictment. Second, if

---

[4] The state asserts that the evidence is admissible under this court's decision in *State v. Wilhelm*, 168 Or App 489, 492-93, 3 P3d 715 (2000), to show the defendant's sexual predisposition toward the victim. In setting out its argument, the state appears to conflate the test in *Wilhelm* with the five-factor test in *Johns*. However, the test in *Johns* applies where intent is at issue and the uncharged prior conduct involves a *different victim*. The test in *Wilhelm*, which derives from the Supreme Court's holding in *McKay*, 309 Or at 308, applies, by its terms, to conduct involving the *same victim*. Like *Johns*, however, *Wilhelm*-type evidence giving rise to an inference of sexual predisposition toward the victim is relevant to prove intent.

A common feature of cases in that line is that the defendant *did not deny* that the charged acts took place; rather, the defendant denied that he acted with the requisite sexual intent. *See, e.g., State v. Muzzy*, 190 Or App 306, 330, 79 P3d 324 (2003), *rev den*, 336 Or 422 (2004) (evidence that defendant had repeatedly exposed himself to the victim was admissible to show that he acted with intent to promote sexual contact with the victim when he masturbated in her presence).

Here, in contrast, defendant denies that the charged conduct took place and, thus, we are presented with the issue identified in *Leach*; that is, whether evidence of defendant's intent (and, logically, sexual predisposition tending to show intent), is relevant where the defendant denies the charged conduct took place. Because we hold that the evidence was admissible to explain the victim's delay in reporting the alleged abuse, we need not reach that question.

the victim witnessed an argument between her mother and defendant concerning defendant's conduct, that evidence would be relevant to the issue whether the victim believed that reporting the abuse would have any real effect, that is, the trier of fact could infer from the fact that her mother did nothing more than argue with defendant that the victim believed reporting the abuse would be futile. Finally, if a trier of fact drew the inference that the victim's mother told her, at some later time, that she had caught defendant spying on the victim in the shower, the evidence, although perhaps less probative to explain the victim's delayed reporting, would still be relevant for that purpose.[5] As we recognized in *Galloway*, when communicated to a minor victim, a parent's stance regarding the seriousness of alleged abuse logically could influence the victim's willingness to report the abuse. *Cf. Galloway*, 161 Or App at 538-39 (mother's statement to minor victim that reporting abuse would "ruin defendant's life" was relevant to the victim's delayed reporting). Thus, we conclude that the trial court erred in excluding the evidence described in paragraph three.[6]

■     Paragraph seven of the state's proffer read:

"7)     During the time periods alleged above, the victim's younger brother * * * reported to the Department of Human Services (DHS) that he witnessed his father,

---

[5] We hasten to add that we are not holding that the state's proffered evidence necessarily will be admitted into evidence in this case. The evidence in paragraph 3 would not be admissible if the victim first learned of the spying incident after she first reported defendant's abuse sometime after the last charged incident in this case, which allegedly occurred in 2005. However, it is reasonable to infer from the terms of the proffer that the victim contemporaneously learned of the incident or, if not, that she learned of it sometime before she reported defendant's alleged abuse. As now-Chief Justice De Muniz aptly stated in his concurring opinion in *Leach*, 169 Or App 538-39:

"Because this case has not yet been tried, we are operating in the absence of facts, in a netherworld so to speak, and relying on the parties' representations of what they think their evidence will establish. Although motions *in limine* may serve a valuable function in some cases, a trial court is always free to revisit a pretrial ruling if the facts or theory presented pretrial develop into something else at trial, or if, for example, a proper foundation is not laid for the evidence subject to the pretrial ruling."

[6] As discussed, defendant makes only a *Johns* argument in defense of the exclusion of the evidence in paragraph three. Because we conclude that that evidence was relevant to explain the victim's delayed reporting, we do not reach the question whether it was relevant to show defendant's intent under *Johns*.

> the defendant, enter the victim's room late at night after everyone was asleep and that the defendant would stay in there for about half an hour. [The brother] also reported that his mother told him that she caught the defendant looking into the bathroom while the victim was showering. [Brother] also reported that defendant would come into the bedroom that [brother shared] with the victim. [Brother] reported that the defendant would come in late at night and that he would kneel down by the victim who was below [brother] on a lower bunk. [Brother] remembers this happening 3 to 4 times a week."

The trial court excluded the evidence in paragraph seven, reasoning that:

> "There is no assertion that the victim was notified of the Defendant's acts. Therefore, it does not explain any delayed reporting. These are statements by a third party, not the victim and there is no assertion that the victim was ever notified of this prior to reporting. The Court denies admission on relevancy grounds."

For the reasons set out with regard to paragraphs one and three, again we disagree. At the least, the evidence in paragraph seven would present a more complete picture of the dynamics within the family that could have affected the victim's decision not to report the alleged abuse. The scope of the evidence that is relevant to delayed reporting under *Zybach* is wide, but not unlimited. The proffered evidence, however, fits within the category delineated by *Zybach*, because it presents, in part, an account of the defendant's actions in the victim's presence from a witness to those acts. As we observed in *Galloway*, "as *Zybach* recognizes, a party carrying the burden of proof is entitled to address, as part of its affirmative case, inherent weaknesses in its proof that might make its case less believable." *Galloway*, 161 Or App at 540. The proffered evidence was relevant for that purpose.

Moreover, the account of defendant's acts in paragraph seven tended to corroborate the evidence described in paragraph one; that is, that defendant had come into the victim's room late at night on several occasions. It also tended to corroborate the evidence proffered in paragraph three that the victim's mother told her she had caught defendant spying

on the victim in the bathroom. *See State v. Rood*, 118 Or App 480, 484-85, 848 P2d 128, *rev den*, 317 Or 272 (1993) (evidence that the defendant had purchased X-rated videos was admissible to corroborate complainants' accounts that the defendant had watched X-rated videos while sexually abusing them).

Because the evidence proffered by the state was relevant for the nonpropensity purpose of explaining the victim's delayed reporting of the charged offenses, the trial court erred by excluding it on relevance grounds.[7] Accordingly, we reverse and remand.

Motion to dismiss denied; reversed and remanded.

---

[7] Having excluded the evidence on relevance grounds, the trial court did not address defendant's argument that, even if relevant, the evidence should be excluded under OEC 403 because any relevance was outweighed by its unfairly prejudicial effects. As it did before the trial court, the state asserts on appeal that OEC 404(4) has the effect of eliminating the OEC 403 balancing analysis for evidence that is otherwise admissible under OEC 404(3). Because defendant has not argued that the trial court was constitutionally required to weigh the probative value of the excluded evidence against the danger of unfair prejudice, OEC 403 was not a bar to the admission of the challenged evidence. *State v. Cavaner*, 206 Or App 131, 135, 135 P3d 402, *rev den*, 341 Or 197 (2006).