Argued and submitted September 21, 2011, reversed and remanded
October 17, 2012

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

DAVID LEO WHITE, JR.,
*Defendant-Respondent.*

Deschutes County Circuit Court
08FE1173MS; A146936

288 P3d 985

Jeff J. Payne, Assistant Attorney General, argued the
cause for appellant. On the brief were John R. Kroger,
Attorney General, Mary H. Williams, Solicitor General, and
Linda Wicks, Assistant Attorney General.

Valerie Wright argued the cause and filed the brief for
respondent.

Before Ortega, Presiding Judge, and Brewer, Judge, and
Sercombe, Judge.*

SERCOMBE, J.

_____

* Brewer, J., *vice* Rosenblum, S. J.

**SERCOMBE, J.**

Defendant is charged with three counts of first-degree unlawful sexual penetration, ORS 163.411; four counts of first-degree rape, ORS 163.375; five counts of first-degree sexual abuse, ORS 163.427; one count of first-degree criminal mistreatment, ORS 163.205; one count of unlawful use of a weapon, ORS 166.220; and one count of strangulation, ORS 163.187. The state appeals a pretrial order that excluded expert testimony regarding the phenomenon of "delayed reporting"[1] of abuse on the basis that it was not relevant. Specifically, the trial court ruled that, because defendant did not intend to use the complainant's five-year delay in reporting the alleged abuse to impeach her credibility, expert testimony regarding "delayed reporting" was not relevant to any fact at issue in the case. The state argues that the expert testimony is relevant to explain possible reasons for the delay and to counter a possible inference that the complainant's delay in reporting the alleged abuse means that it did not occur. On review for errors of law, *State v. Faunce*, 251 Or App 58, 72, 282 P3d 960 (2012), we reverse and remand.

The relevant procedural facts are undisputed. In August 2008, the complainant reported that defendant had sexually abused her on numerous occasions between November 20, 1998 and November 20, 2003. On that basis, defendant was charged with the aforementioned crimes.

Prior to trial, defendant moved *in limine* to exclude expert testimony regarding "delayed reporting." At a hearing on that motion, the state's expert, Storey, testified regarding her intended testimony at trial. The prosecutor elicited testimony to qualify Storey as an expert and to establish that the evidence concerning "delayed reporting" was valid scientific evidence. Storey then testified that there is a public misconception that "children will tell if [abuse] is happening to them." She explained that, in fact, "in a majority of cases[,] children * * * delay in reporting * * * abuse" and that, in one

---

[1] As previously noted by the Supreme Court, "delayed reporting" is the "label used by professionals in the field to describe a situation in which a sexually abused child does not report an abusive event immediately but, instead, reports it some time later." *State v. Perry*, 347 Or 110, 112 n 1, 218 P3d 95 (2009).

study, the rate of "delayed reporting" was "as high as 76 percent." Storey noted that there are many reasons why a child may delay reporting sexual abuse:

> "[T]he relationship between an *** alleged offender and alleged victim, fear of consequences for themselves, for their family, for the offender, sometimes they're concerned about the wellbeing of the alleged offender. They look at harm to themselves, harm to—you know, maybe threat of harm to some other family members, embarrassment, shame, guilt."

Storey emphasized, however, that a child's delay in reporting alleged abuse is "not diagnostic of abuse at all." Also at that hearing, the parties stipulated that the complainant would testify at trial that she delayed reporting the alleged abuse because she was afraid of defendant.

Defendant argued that Storey's testimony regarding "delayed reporting" was not relevant because, although defendant's theory of the case was that the complainant fabricated the abuse, he did not intend to argue at trial that the jury should consider the delay as evidence of that fabrication. After noting that "defendant will not argue the theory that the [complainant's] delayed reporting affirmatively indicated that her report was a fabrication," the court ruled that Storey's testimony was "not relevant to the case as outlined by the defense." However, the court further ruled that, "[i]f the defense raises the issue of delayed reporting in his case, the [s]tate will be allowed to put on evidence of delayed reporting during [its] rebuttal."

On appeal, the state contends that the court erred in ruling that the testimony was not relevant unless defendant "rais[ed] the issue of delayed reporting in his case." Specifically, the state argues, as it did below, that the evidence is relevant to explain possible reasons for the delay and to counter a possible inference that the complainant's delay in reporting the alleged abuse means that it did not occur. In the state's view, under *State v. Zybach*, 308 Or 96, 775 P2d 318 (1989), and *State v. Galloway*, 161 Or App 536, 984 P2d 934 (1999), *rev den*, 330 Or 331 (2000), the complainant's five-year delay in reporting is an inherent weakness in the state's case that it is entitled to address in its case-in-chief.

Defendant responds that, under *State v. Perry*, 347 Or 110, 218 P3d 95 (2009), expert testimony concerning "delayed reporting" is relevant only where a defendant argues that the complainant fabricated the abuse *and* that the delay itself is evidence of that fabrication.[2] We conclude that the expert testimony is independently relevant to help explain why the complainant delayed reporting the abuse and to counter a possible inference by the jury that the delay is indicative of fabrication.

To be admissible, scientific evidence must be relevant under OEC 401. *State v. Evans*, 236 Or App 467, 470, 236 P3d 848 (2010), *rev den*, 350 Or 230 (2011). That rule provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." If evidence is logically relevant under OEC 401, a trial court has no discretion to treat it as irrelevant. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

In *Zybach*, the state sought to introduce evidence of encounters between the victim and the defendant to explain why the victim waited nine months to report that the defendant had raped her. 308 Or at 99. The trial court admitted the evidence as relevant, and this court reversed, characterizing the evidence as rehabilitation of the victim's testimony before any impeachment had occurred. *Id.* at 100. On review, the Supreme Court affirmed the trial court, holding that the evidence was "relevant to show why the child had not reported the original sexual assault" and that it was "admissible in the state's case-in-chief under its

---

[2] Additionally, defendant contends that the expert testimony is duplicative given the complainant's intended testimony regarding the reasons for the delay and that, accordingly, that evidence does not assist the trier of fact under OEC 702. *See* OEC 702 ("If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."). We reject that argument without discussion.

Defendant does not contend that the evidence was inadmissible because it was not scientifically valid under the analysis described in *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995), or because it was unfairly prejudicial under OEC 403.

obligation to prove the charge beyond a reasonable doubt." *Id.* The court reasoned that

> "[t]he state was in no position to withhold from the court or the jury that there had been a nine-month delay in reporting this crime. In order to develop credibility with the court and, particularly, the jury, it was permissible for the state to bring out 'up front' the delayed reporting. To require the state to mask or withhold this information until brought out by the defense on cross-examination would have subjected the state to charges and arguments that the state was withholding valuable information from the jury that was only brought out by the defense. It would be unrealistic to require the state to restrict its case-in-chief to the testimony of the child as to what occurred [at the time of the alleged crime] and to make it wait until after the predictable cross-examination about the delay before being allowed to explain the reasons for the delayed reporting."

*Id.* at 100-01.

Similarly, in *Galloway*, we relied on *Zybach* in concluding that evidence of statements made by the defendant's wife to the victim was independently relevant to explain why the victim delayed reporting the full details of sexual abuse. 161 Or App at 542. In that case, the trial court ruled that the statements were not relevant to the state's case-in-chief but that they would be relevant in rebuttal if the defendant impeached the victim on the basis of the inconsistency in the victim's reporting. *Id.* at 540. We reversed the trial court, explaining that,

> "[a]s *Zybach* recognizes, a party carrying the burden of proof is entitled to address, as part of its affirmative case, inherent weaknesses in its proof that might make its case less believable. That is not a matter of 'rehabilitating' a witness; it is a matter of explaining the circumstances fully so that the trier of fact is not left with uncertainties that might otherwise detract from the strength of the party's case. *Zybach* makes clear that evidence serving that purpose is relevant and, if not inadmissible for other reasons, may be placed before the trier of fact during the party's affirmative case. Moreover, the court observed that, to the extent that such inherent weaknesses in a party's affirmative case also may expose the evidence to attack by

the opposing party, the party offering the evidence need not wait until rebuttal to anticipate the attack[.]"

*Id.* at 540-41 (footnote omitted). We noted that, sometimes, evidentiary weaknesses are more damaging to a party when they are not brought out by the opposing party but, instead, are left unanswered:

"[B]ecause it is sometimes more effective to plant seeds of doubt than to let them germinate, opposing counsel may reserve comment on those weaknesses until closing argument, at which point no response or explanation is possible. That potential scenario underscores that the issue is not one of rehabilitation in response to impeachment, but instead has to do with the quality and thoroughness of the direct proof. Moreover, it is worth observing that even when an opposing party does not seize on such weaknesses, jurors may still identify them and, in the course of their deliberations, may conclude that without an explanation of circumstances that raise questions in the jurors' minds, the party's burden of proof is not satisfied. Leaving jurors to wonder about such matters is, of course, particularly risky where, as in criminal cases, the burden of proof is beyond a reasonable doubt."

*Id.* at 541 n 3.

In this case, the trial court ruled that the expert testimony regarding "delayed reporting" was not relevant to the state's case-in-chief but, rather, was only relevant as rebuttal evidence should defendant impeach the complainant's credibility by referencing the delay. The trial court erred in doing so. The evidence at issue—expert testimony establishing the fact that a majority of children delay reporting sexual abuse and noting common reasons for delay—is relevant to help explain why the complainant may have delayed reporting the abuse and to counter a possible inference by the jury that the delay is indicative of fabrication. *Zybach* and *Galloway* make clear that a complainant's delay in reporting alleged abuse is an inherent weakness in the state's case and that the state is entitled to address that weakness in its case-in-chief. *See also State v. Panduro*, 224 Or App 180, 197 P3d 1111 (2008) (evidence of the defendant's interactions with the victim was relevant to explain delayed reporting of abuse and was admissible in the state's case-in-chief).

As noted, defendant argues that this case is not controlled by *Zybach* and *Galloway* but is, instead, controlled by *Perry*. Defendant contends that *Perry* stands for the proposition that expert testimony regarding "delayed reporting" is relevant *only* in circumstances where the defendant has indicated an intention to argue that the delay is evidence of fabrication. We disagree.

In *Perry*, a child reported several months after the crimes allegedly occurred that the defendant had sexually abused her. 347 Or at 112. Prior to trial, the defendant moved *in limine* to exclude expert testimony regarding "delayed reporting." *Id.* at 113. At a hearing on that motion, the expert testified that "delayed reporting"

> "was 'common' and 'well understood,' and that there was a body of literature dealing with the issue. [The expert] also testified that a * * * study of delayed reporting, although not peer reviewed, was consistent with the 'national experience' as reported in the literature—*i.e.*, that, in cases of children with 'abnormal [physical] exams,' there was a delay in reporting in a majority of those cases."

*Id.* at 114 (footnote omitted). The defendant argued, among other things, that the expert's testimony was irrelevant, *id.*, but the trial court rejected that objection and denied the motion. *Id.* at 115. On review, the Supreme Court noted that the defendant "had signaled his intention to defend on the theory that the victim was fabricating and that her delay in reporting was evidence of that fabrication." *Id.* at 122. The court held that the expert's testimony

> "that similar delayed reporting often is seen in verified cases of child sexual abuse tended to counter that inference. The testimony was relevant in that respect at least, *i.e.*, it had some 'tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable.'"

*Id.* at 118 (quoting OEC 401) (brackets in *Perry*). Later, the court reiterated that, "[i]f [the] defendant was attempting to make something of the victim's delay in reporting (and he was), then the state was entitled to meet that argument." *Id.* at 118-19.

Defendant reads *Perry* too broadly. The court in *Perry* did not hold that expert testimony regarding "delayed reporting" is relevant *only* in cases where a defendant indicates that he intends to use the delay to impeach the victim's credibility. Rather, the court held that the expert's testimony in that case was relevant *at least* to meet the defendant's intended argument that the victim's delay in reporting the abuse indicated that she had fabricated the abuse. In other words, the court in *Perry* did not assess the relevance of expert testimony regarding "delayed reporting" where a defendant does not intend to call attention to the delay but, nonetheless, it remains an inherent weakness in the state's case. Accordingly, *Perry* does not preclude our conclusion here: The expert testimony concerning "delayed reporting" is independently relevant to help explain why the complainant delayed reporting the abuse and to counter a possible inference by the jury that the delay is indicative of fabrication. The trial court erred in excluding the evidence as irrelevant.

Reversed and remanded.