Argued and submitted July 9, 2012, affirmed February 6, petition for review denied July 25, 2013 (353 Or 868)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MELISSA LOUISE STEPHENS,
*Defendant-Appellant.*

Washington County Circuit Court
C091434CR; A146040

296 P3d 598

Robert B. Hamilton argued the cause for appellant. With him on the brief were Lisa A. Maxfield and Pacific Northwest Law LLP.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant, an elementary school teacher, was convicted of sexual crimes against CM when he was a student in her fourth, fifth, and sixth grade classes.[1] CM did not report the alleged abuse to police until he was 17 years old. On appeal, defendant asserts, first, that the trial court erred in allowing the prosecutor to impeach a defense witness by questioning her decision, after consulting her lawyer, to refuse interview requests from prosecution investigators; and second, in allowing the prosecution to introduce evidence of uncharged sexual conduct involving defendant and CM. We affirm.

Defendant's defense at trial was that, contrary to CM's reports and testimony, the alleged sexual encounters with him did not occur. Thus, credibility was a key issue at trial. One incident bringing the credibility of CM into focus involved CM's report that, on one occasion when he and defendant were in a classroom together, defendant had partially removed or taken off her shirt and the two were kissing when there was a knock on the door. CM reported that defendant ran to the back of the classroom and that CM opened the door to let in Krista Mahler, who worked with defendant as an art teacher. According to CM, defendant and Mahler then talked briefly.

Detectives wanted to corroborate CM's report. They contacted Mahler, and she initially agreed to meet with them. Subsequently, however, she spoke to her attorney, who called one of the detectives, Rose, on her behalf and told him that Mahler would not meet with him.

Mahler was subpoenaed to appear at trial. The state did not call her as a witness, but defendant did. In her direct testimony, Mahler recalled a time when she had tried to open a classroom door and found that she couldn't. She testified that she knocked on the door and that CM immediately opened it. According to Mahler's version of the incident, defendant was immediately visible when the door opened and did not emerge from a back room. Mahler

---

[1] Defendant was convicted of rape in the first degree, ORS 163.375, two counts of sexual abuse in the first degree, ORS 163.427, and sodomy in the first degree, ORS 163.405.

testified that defendant was sitting at the table "and their work was right there." Mahler testified that she asked why the door was locked, and CM and defendant told her that they had not realized that it was. Mahler was aware that the school had an open door policy, but recalled knowing that sometimes classroom doorknobs stuck. She testified that the incident "seemed very accidental. It wasn't something that put a red flag out for me."

The prosecutor wanted to show that Mahler was biased in favor of defendant because of their personal and employment relationship. On cross-examination, he asked Mahler to explain what had happened to cause her to decide to cancel her meeting with the investigator. The following exchange occurred:

"Q. Okay. Now, after the allegations came out, you received a phone call that was on July 13th of 2009 from a man identifying himself as Detective Jack Rose in this case?

"A. I did.

"\* \* \* \* \*

"Q. Okay. And you agreed to meet him in person and talk to him?

"A. I did.

"\* \* \* \* \*

"Q. Okay. But several hours later, you had your lawyer call him back and say, 'You're not to meet with my client, Krista Mahler.'

"A. I did.

"\* \* \* \* \*

"Q. Something happened in the couple of hours between you agreeing to call Jack Rose back and your lawyer saying, 'No way.'

"A. Mm-hmm.

"Q. What was that?

"A. That was me having no experience with any kind of case like this—

"Q.   Right.

"A.   —never walking into a courtroom, knowing nothing about attorneys—

"Q.   Right.

"A.   —working for a program that all of a sudden this is happening in—

"Q.   Right.

"A.   —and so me seeking out an attorney so that I know exactly what I can and cannot do—

"Q.   Right.

"A.   —what is required of me, and basically so that I know what my rights are. He said, 'You can go talk to Detective Rose if you'd like, but if he does not subpoena you, you aren't required to.' So I didn't.

"Q.   It would have been just as easy of a matter to sit down and give the detective a fifteen-minute interview with your lawyer present?

"[Defense counsel]:   Objection, Your Honor.

"The Court:   Overruled.

"[Prosecutor]:   You could have chosen that route?

"A.   I could have.

"Q.   Okay. What happens if people who are potential witnesses to crimes don't talk to police?

"[Defense counsel]:   Objection, Your Honor.

"The Court:   Sustained.

"[Prosecutor]:   Don't you see any value in talking to—

"[Defense counsel]:   Objection, Your Honor.

"The Court:   Sustained.

"* * * * *

"[Defense counsel]:   This whole line of questioning is just designed to—it's asking the same question in as many different ways as [the prosecutor] can think of.

"The Court:   Yeah, but you do the same thing. So tell me what that means.

"[Defense counsel]:   Well, it's just—it has absolutely no relevance to this proceeding.

"The Court:   And I'm thinking about that. Doesn't it go to bias, motives, or interests of the witness, why she didn't want to talk?

"[Defense counsel]:   Well, you know, the fact of the matter is her lawyer gives her legal advice, and then the lawyer calls up the detective. It would be, first of all, privileged.

"The Court:   I think that's waived. She's got on the stand and testified.

"[Defense counsel]:   Well, but in terms—privileged in terms of communication between she and her lawyer.

"The Court:   She's not asserted any privilege. I heard no privilege asserted. You don't get to assert it for her.

"[Defense counsel]: Well, I'm not asserting it. I'm saying I think it's privileged—

"The Court:   It's not.

"[Defense counsel]:   It depends on her choice of—

"The Court:   It's not that. Go on to something else.

"* * * * *

"The Court:   Okay. I think [the prosecutor] gets to explore her bias, motives—bias, motives or interest of the witness, and I think you get to ask regarding why she didn't want to speak to the police, that's about it, and then you move on."

In closing, the prosecutor proposed to the jury that Mahler had decided not to talk to investigators because she had witnessed inappropriate sexual behavior by defendant in the locked classroom and did not want to provide incriminating information.

In her first assignment of error, defendant asserts that the prosecutor's questioning and statement in closing argument about Mahler's decision to speak with her attorney and to remain silent were comments on her exercise of privilege and therefore inadmissible under OEC 513(1): "The claim of privilege, whether in the present proceeding

or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn from a claim of privilege." "Privilege," for purposes of OEC 513(1), encompasses privileges not enumerated in the evidence code, including the right to counsel and the right to remain silent. *John Deere Co. v. Epstein*, 307 Or 348, 354, 769 P2d 766 (1989). The state responds initially that defendant did not adequately preserve the claim of error that she raises on appeal. We reject that assertion. Defendant argued that facts surrounding Mahler's consultation with her own attorney "would be, first of all, privileged." That was sufficient.

The state is on firmer ground in arguing that, even if Mahler's decision to consult her attorney and remain silent with respect to the investigation was privileged, and questioning her about that decision violated OEC 513(1)—a concession that the state does not make and a conclusion that we do not address—defendant's objection to that line of questioning did not occur until well after that information had been elicited *without* objection. As the exchange quoted above demonstrates, the state is correct. Thus, Mahler waived any privilege she might have had. OEC 511 (waiver by voluntary disclosure). And, in any event, even if admitting the evidence to which defendant objected was error, it was harmless in light of the evidence to which she did not object. We reject defendant's first assignment of error.

In her second assignment, defendant contends that the trial court erred in rejecting her motion *in limine* in which she sought to exclude CM's testimony about uncharged incidents of sexual contact with defendant. Defendant argues that the evidence was inadmissible under OEC 404(3) because it was offered purely to prove propensity and was not relevant to any permissible fact at issue.[2] The state responds preliminarily that defendant did not preserve this claim of error because, at trial, she conceded that the evidence was relevant and argued only that the probative

_____

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

value of the disputed evidence significantly outweighed its undue prejudice and was therefore inadmissible under OEC 403.[3] In any event, the state contends, the evidence was relevant for several permissible purposes. To put those arguments in context, we provide the following excerpt from the transcript. It contains the entire discussion of uncharged conduct.

"[Defense counsel]:   And then Judge, there are several instances in the alleged victim's * * * statements, where he talks about prior acts which are uncharged—

"The Court:   Oh, okay, this is the—

"[Defense counsel]:   —allegations and—

"The Court:   This is the part that I remember from our discussion yesterday.

"[Defense counsel]:   Right. This is—which we gave the Court a heads-up on yesterday, and I certainly submit that, you know, these uncharged prior acts are inadmissible. I'm not—certainly not going to say that they are irrelevant, but I think that any relevance they have is far outweighed by the prejudice that's created with respect to [defendant] and her ability to get a fair trial and have her due process.

"The Court:   Thank you. And as I warned you yesterday, when we're talking about prior acts that occurred between an adult and a child, and it is the same adult and the same child, those prior acts are going to come in. They are certainly probative of whether or not [defendant] has any kind of affections or interest in the child, and those are probative as to whether or not this event actually occurred, and the circumstances surrounding that are all going to be relevant. It's coming in. That's like a train coming down the track that you just can't stop.

"[Defense counsel]:   And I would simply submit, Judge, that—you know, that there's certainly case law on this * * * which talks about the courts—especially following common law tradition having come to disallow this kind of evidence

---

[3] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

to a defendant's evil character to establish probability of guilt. There's also—

"The Court:   Did it involve a case like this, where it was an adult with a child and previous sex abuse?

"[Defense counsel]:   No, no, I'm not going to say that it has this—you know, on all four, * * * but in terms of the type of evidence and whether or not it's appropriate to admit the type of evidence, especially in—I submit the question is not simply is it relevant, but that there needs to be the balancing test—

"The Court:   I agree.

"[Defense counsel]:   —employed

"The Court:   I recognize that, and the question is whether its probative value is far outweighed by its prejudicial effect. In this case, it's not. I mean we're talking about the whole entire relationship between a child and an adult, and whether or not certain things happened or did not.

"[Defense counsel]:   And we have all these uncharged allegations from—that are alleged to have occurred in other counties, other jurisdictions, which again, you know, putting [defendant] in a position of having to defend a variety of uncharged acts, * * * and that simply put, that creates, you know, a huge degree of unfair prejudice when the jury hears this information."

The state maintains that, because defendant conceded that the evidence was relevant but argued only that the evidence's prejudicial effect outweighed its probative value, she did not preserve the argument she makes on appeal that the evidence is *not* relevant for any permissible purpose. We agree that defendant's argument at trial was not as precise as it could have been; however, we also note that the argument regarding relevance makes the point that character evidence is, indeed, relevant, but only for the impermissible purpose of convincing the jury that defendant is a bad person. Again, we reject the state's preservation argument.

We conclude, however, that the state has the better argument on the merits. In a case like this, involving charges of sexual abuse of a child where the reporting was

significantly delayed, evidence of sexual contact that is not charged is relevant to explain that delay; the existence of a long-term "relationship" provides relevant context. *State v. Zybach*, 308 Or 96, 100, 775 P2d 318 (1989); *State v. Panduro*, 224 Or App 180, 187, 197 P3d 1111 (2008). Further, when the uncharged conduct and the charged crimes involve the same child, evidence of the uncharged conduct is relevant "to demonstrate the sexual predisposition this defendant had for this particular victim, that is, to show the sexual inclination of defendant toward the victim, not that [she] had a character trait or propensity to engage in sexual misconduct generally." *State v. McKay*, 309 Or 305, 308, 787 P2d 479 (1990). Because the evidence was relevant for a noncharacter purpose, it was admissible. OEC 404(4).[4]

Affirmed.

---

[4] Defendant also argues that her conviction by a nonunamious jury violates the Sixth and Fourteenth Amendments. We have rejected that argument on several occasions. *E.g.*, *State v. Camacho-Alvarez*, 225 Or App 215, 200 P3d 613 (2009).