POWERS, J.
*91 In this consolidated criminal appeal, defendant challenges the results of two cases that were tried together. He appeals from the judgment of conviction in one case for one count of menacing constituting domestic violence, ORS 163.190, and one count of reckless driving, ORS 811.140. He also appeals from the judgment of contempt in the second case based on the court's finding that he violated a restraining order, ORS 33.015 ; ORS 33.065. Defendant contends that the trial court erred in failing to conduct the balancing required by OEC 403 before admitting evidence of his previous abuse of the complainant and that, even if the court did conduct balancing, it did so incorrectly and thus erred in admitting the evidence. We conclude that, even if the trial court conducted OEC 403 balancing, it improperly weighed the probative value of the disputed evidence and, consequently, abused its discretion. The error was not harmless. Accordingly, we reverse and remand.
In reviewing a trial court's application of OEC 403, we begin by summarizing all of the evidence and procedure related to the trial court's ruling. See, e.g. , State v. Baughman , 361 Or. 386, 388-90, 393 P.3d 1132 (2017) ( Baughman II ). As a result of previous assaults, L, who was defendant's wife, had obtained a restraining order against defendant. The charges at issue in these cases arose from an incident in which defendant went to the apartment complex of his and L's son, in St. Helens, early on a weekday morning. L regularly went to the apartment complex around that time to help prepare her granddaughters for school. Defendant admitted that, at the apartment complex, he photographed L in her white minivan.[1] L testified that defendant then followed her for 30 to 40 minutes as she bought breakfast at McDonald's in Scappoose and proceeded toward her workplace in Beaverton. She also testified that, three or four times during that part of the morning, when L's van was stopped at traffic lights, defendant drove his car up behind the minivan and pushed it forward with his car.
*92 As L approached her workplace and defendant continued to follow her and bump her minivan, she called 9-1-1. Following the dispatcher's instructions, she stopped in Beaverton, and police officers stopped defendant nearby. The officers discovered marks on the minivan's rear bumper that matched the height and spacing of the screws holding the front license plate on defendant's car. On cross-examination of L, defense counsel sought to explain the marks by attempting to elicit her testimony that defendant had once pushed her vehicle out of a snow bank.
Defendant testified that he had been at his son's apartment in St. Helen's at 6 a.m. to take out the garbage and that he was heading from there to an auto parts store in Beaverton to get a part for his car. He admitted seeing L at the apartment complex and that he had been in Scappoose, but he asserted that he had not been following her and that it was just a coincidence that he was *229 driving behind her in Beaverton when he was stopped. He denied making contact between his car and the minivan.
The parties agreed that the criminal charges would be tried to a jury and that the trial court would rely on the same evidence to decide whether defendant had violated the restraining order. The morning of trial, the prosecutor informed the court that the state intended to "offer evidence of prior bad acts, particularly violent instances between the defendant and the victim in this case" because, in the state's view, that evidence was related to both the restraining order violation and the menacing charge. The prosecutor explained, "I think the evidence is clearly relevant to show the defendant's intent, lack of mistake and the reasonableness of the victim's fear as it relates to [the menacing charge]."
In response, defendant acknowledged that the state could present evidence that a restraining order existed. However, he argued that his "position would be that the order itself would be sufficient and that the allegations behind that order would not be relevant to this case. And it would in fact be highly prejudicial to [defendant], the allegations themselves ***." He contended that, "if the jury were to hear those, that that would clear[ly] go to the *93 jury considering it as character evidence to some extent, or maybe to a large extent." Accordingly, he argued, "I don't think that the underlying allegations of the restraining order should be admissible or should be something that the state should be allowed to get into during the course of the trial." In response, the prosecutor again asserted that the allegations underlying the restraining order were relevant to "defendant's intent, lack of mistake, and the victim's fear. It's basically a [ State v. Johns , 301 Or. 535, 725 P.2d 312 (1986),] issue."
Referring to an earlier discussion that had taken place in chambers, the court ruled that evidence about the allegations underlying the restraining order would be admitted: "So and that is what we have discussed in chambers. And I think under a [ Johns ] analysis those kinds of allegations indeed do-that kind of evidence does come in for those reasons," that is, to show defendant's intent, lack of mistake, and the reasonableness of L's fear. After that ruling, L testified at trial that, on two occasions before the restraining order was issued, defendant had grabbed her by the throat and swung her around by her hair. The court also admitted a copy of the petition for the restraining order that recounted the same events. Ultimately, the jury convicted defendant of menacing and reckless driving, and the trial court found him in contempt of court for violating the restraining order. Defendant appeals.
In his opening brief, defendant contends that the court erred in admitting the evidence without first conducting the balancing required by OEC 403.[2] In a supplemental brief submitted after the Supreme Court decided Baughman II , he argues that the court erred in admitting L's testimony about the previous abuse and the copy of the petition for the restraining order because that evidence was not admissible for the three nonpropensity purposes for which the state offered it: defendant's intent, lack of mistake, or the reasonableness of L's fear. Consequently, he contends, even *94 if the court conducted OEC 403 balancing, that balancing was flawed because the court misapprehended the probative value of the evidence. Accordingly, he argues, we must reverse his convictions and remand for further proceedings.
In response, the state advances a variety of arguments, including that the trial court did conduct OEC 403 balancing; that defendant failed to preserve his argument that the court erred in failing to conduct it; that defendant failed to make a record sufficient for our review; that any error was harmless because (1) the trial court would have admitted the evidence even if it had conducted OEC 403 balancing and (2) the jury would have found defendant guilty regardless of the disputed evidence; and that, regardless of *230 why the trial court admitted the evidence, Baughman II does not require a remand for the court to conduct OEC 403 balancing.
As we will explain, we conclude that defendant requested OEC 403 balancing and that, even assuming that the trial court conducted OEC 403 balancing, it erred in concluding that the disputed evidence was probative of defendant's "lack of mistake" under Johns and, consequently, abused its discretion under OEC 403. We cannot say that the error was harmless. Accordingly, the appropriate disposition is a remand for further proceedings, which will allow the trial court to correctly evaluate and balance the probative value and risk of unfair prejudice from the disputed evidence.[3] In light of that conclusion, we decline to consider defendant's arguments regarding the trial court's *95 other two stated reasons for admitting the evidence, viz. , to show defendant's intent and the reasonableness of L's fear.
"When a party objects to the admission of other acts evidence, a trial court first should determine whether the proffered evidence is relevant for one or more nonpropensity purposes, under OEC 404(3)." Baughman II , 361 Or. at 404, 393 P.3d 1132. OEC 404(3) provides:
"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
If the proffered evidence is relevant for one or more of those purposes, "then the court should determine, at step two, whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice under OEC 403."[4] Baughman II , 361 Or. at 404, 393 P.3d 1132. To do that, the Supreme Court has required a trial court to undertake a four-step "approved method of analysis" prescribed by State v. Mayfield , 302 Or. 631, 645, 733 P.2d 438 (1987) :
"First, the trial judge should assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."
*231 *96 An error in determining the nonpropensity purpose or purposes for which evidence is admissible is an error in determining the "quantum of probative value of the evidence" and, consequently, results in an abuse of discretion in conducting OEC 403 balancing. Mayfield , 302 Or. at 645, 733 P.2d 438 ; see Baughman II , 361 Or. at 407, 393 P.3d 1132 (explaining that an erroneous determination that evidence was admissible for three nonpropensity purposes, when actually the state had advanced no nonpropensity reason for admission, "significantly affected the trial court's decision at the second step of the analysis," that is, the court's OEC 403 balancing); State v. Baughman , 276 Or. App. 754, 772, 369 P.3d 423 (2016) ( Baughman I ), aff'd , 361 Or 386, 393 P.3d 1132 (2017) (holding that the erroneous determination that evidence was admissible for two nonpropensity purposes, when actually the evidence was relevant for only one nonpropensity purpose, meant that "the trial court did not correctly consider the 'quantum of probative value of the evidence' " and required remand).
We begin by considering the state's preservation argument. The state concedes, and we agree, that defendant preserved his argument that the disputed evidence was inadmissible under OEC 404(3). As explained below, we also conclude that defendant requested that the court exclude the evidence because its risk of unfair prejudice outweighed any probative value that it had.
As noted above, the state asserts that defendant failed to preserve his argument that the trial court erred in failing to conduct OEC 403 balancing, contending that defendant's only objection was to the relevance of the evidence and that he never expressly articulated an argument that, even if the evidence was relevant, it was nevertheless so unfairly prejudicial that it should be excluded under OEC 403. The Supreme Court has not yet addressed the question "whether, in addition to objecting to the admission of [prior acts] evidence, a party also must explicitly seek balancing under OEC 403" to raise an OEC 403 issue on appeal. Baughman II , 361 Or. at 404 n 9, 393 P.3d 1132. We have held, however, that a party must request OEC 403 balancing before the trial court to preserve for appeal any OEC 403 -related error. State v. Clarke , 279 Or. App. 373, 391, 379 P.3d 674 (2016)
*97 (holding that the defendant did not preserve the argument that the trial court erred in failing to conduct OEC 403 balancing because he did not request balancing); see also, e.g. , State v. Hagner , 284 Or. App. 711, 722, 395 P.3d 58, rev. den. , 361 Or. 800, 400 P.3d 922 (2017) (same).
Although defendant did not expressly refer to OEC 403 or request balancing, such an explicit reference is not required if the circumstances otherwise suffice to place the court and opposing parties on notice of defendant's contention that any probative value was outweighed by the risk of unfair prejudice. See State v. Walker , 350 Or. 540, 552, 258 P.3d 1228 (2011) ("The appropriate focus *** is [on] whether a party has given opponents and the trial court enough information to be able to understand the contention and to fairly respond to it."); Peeples v. Lampert , 345 Or. 209, 220, 191 P.3d 637 (2008) (explaining that the touchstone of the preservation requirement is procedural fairness to the parties and the trial court). Here, in addition to challenging the relevance of the evidence, defendant also asserted that it would be "highly prejudicial." Under the circumstances, we conclude that that assertion was sufficient to raise a challenge under OEC 403. See, e.g. , State v. Roberts , 291 Or. App. 124, 129 n 3, 418 P.3d 41 (2018) (holding that the defendant had adequately preserved OEC 403 objection even though his argument to trial court "primarily focused on relevance and spoke little of prejudice," where he asserted that the evidence would be "extremely prejudicial").
We turn to the substance of the parties' arguments. As set out above, the prosecutor cited Johns and argued that the evidence of defendant's previous assaults of L was admissible to show defendant's "lack of mistake" in committing the charged acts, and the trial court agreed. In Johns , the Supreme Court addressed the admissibility of prior acts of a defendant to show the defendant's intent based on the doctrine of chances, which rests on "the proposition that multiple instances of similar conduct are unlikely to occur accidentally."
*232 Baughman II , 361 Or. at 407, 393 P.3d 1132. That is, "[t]he more often a defendant intentionally performs an act, the less likely it is that, when the defendant performs the act again, he or she did so accidentally or innocently." State v. Tena , 362 Or. 514, 524, 412 P.3d 175 (2018). "Lack of mistake"
*98 is a shorthand reference to a theory of admissibility based on the doctrine of chances. See Johns , 301 Or. at 552, 725 P.2d 312 (explaining that evidence admissible under the doctrine of chances shows intent in the sense of "lack of mistake").
The Supreme Court has recently explained that "the doctrine of chances applies only to explain whether or not an act that a defendant performed was performed intentionally. It does not apply when there is a dispute about whether the defendant performed the act at all." Tena , 362 Or. at 524, 412 P.3d 175. In this case, the state contended that defendant had menaced L by trying to push her vehicle into oncoming traffic with his vehicle. Defendant maintained that there was no contact between his car and L's minivan; that is, he denied performing the act at issue. Thus, the doctrine of chances did not apply. See id. at 524-25, 412 P.3d 175 (holding that the doctrine of chances did not apply where the defendant's defense to assault charge was that he did not injure the victim).
Because the trial court erroneously concluded that the disputed evidence was admissible under OEC 404(3) to show lack of mistake under the doctrine of chances, it also erred in determining "the quantum of probative value of the evidence" for purposes of OEC 403 balancing. Mayfield , 302 Or. at 645, 733 P.2d 438. Unless that error is harmless, it requires a remand for the court to correctly evaluate and balance the quantum of probative value of the evidence and the countervailing risk of unfair prejudice to defendant. Baughman I , 276 Or. App. at 772, 369 P.3d 423.
As noted above, the state contends that the error was harmless for two reasons. First, the state contends that, if the trial court had conducted balancing (or if it had conducted it properly), it would not have excluded the evidence. We reject that argument because we do not know what the trial court would have done if it had properly exercised its discretion under OEC 403.
Second, the state asserts that its case was so strong that, regardless of the admission of the disputed evidence, the jury would have convicted defendant. In support of that argument, it quotes State v. Lytsell , 187 Or. App. 169, 181, 67 P.3d 955 (2003), for the proposition that we should evaluate "the relative strength of the state's case as compared to *99 the defendant's case both with and without the challenged evidence."
We agree with the state that its evidence was strong. However, defendant's testimony directly contradicted the state's evidence. Our role in considering whether error is harmless is not to "determine, as a fact-finder, whether the defendant is guilty." State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). "That inquiry would invite [an appellate] court to engage improperly in weighing the evidence and, essentially, retrying the case, while disregarding the error committed at trial, to determine whether the defendant is guilty." Id. Instead, our only inquiry is "whether there was little likelihood that the error affected the jury's verdict"; "[i]t is a legal conclusion about the likely effect of the error on the verdict." Id. The Supreme Court's guidance in Davis redefined our harmless error analysis and, consequently, undermined our earlier statement in Lytsell , which focused on reweighing the evidence rather than evaluating, as a legal matter, whether there was little likelihood that the error affected the verdict. Accordingly, Lytsell does not assist the state here.
Here, admission of evidence detailing defendant's previous assaults of L could have affected the jury's assessment of defendant's credibility and, consequently, could have led the jury to discount defendant's version of events. For the same reason, it could have led the trial court to discount defendant's version of events on the contempt charge. We cannot say that there was little likelihood that the error affected the verdicts. Davis , 336 Or. at 32, 77 P.3d 1111. Accordingly, we reverse and remand for the trial court to evaluate and balance the probative value and risk of unfair prejudice from the disputed *233 evidence. Baughman II , 361 Or. at 410-11, 393 P.3d 1132.
Reversed and remanded.

Defendant asserted that he was more than 500 feet from L at that time and, thus, that his observation of her at the complex did not violate the restraining order.

OEC 403 provides:
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

As our analysis will demonstrate, contrary to the state's argument, defendant has presented us with a record sufficient for appellate review because, at a minimum, the record demonstrates that the trial court erred in concluding that the disputed evidence was admissible under OEC 404(3) to show "lack of mistake." As explained in the text, that legal error affected the trial court's weighing of the probative value of the evidence and, consequently, caused it to abuse its discretion in conducting OEC 403 balancing.
In light of that conclusion, we decline to consider, on this record, defendant's assertion that the trial court also erred in concluding that the evidence was admissible under OEC 404(3) to show defendant's "intent" or "the reasonableness of the victim's fear." On remand, the parties and the trial court will be able to address those or other theories of admissibility and make a complete record of their reasoning. See Baughman II , 361 Or. at 410-11, 393 P.3d 1132 (noting that, on limited remand, "the state will be entitled to make new arguments about the purposes, if any, for which proffered other acts evidence is relevant, and the trial court will have to determine whether the cognizable probative value of that evidence is substantially outweighed by the danger of unfair prejudice that it poses").

"If the trial court determines that the evidence is relevant for a nonpropensity purpose under OEC 404(3) and admissible under OEC 403, then it need not determine whether the evidence also is admissible under OEC 404(4) and OEC 403." Baughman II , 361 Or. at 404, 393 P.3d 1132. This case raises no question of whether the evidence might be admissible to show defendant's bad character under OEC 404(4) and OEC 403 ; consequently, we do not address that question. See Baughman II , 361 Or. at 404-05, 393 P.3d 1132.