ORTEGA, P. J.
*428 *329 Defendant challenges his convictions for multiple sexual offenses, asserting that the trial court erred in admitting evidence of uncharged sexual misconduct and evidence that defendant threatened to kill one of the victims and her mother after the victim's mother reported the sexual abuse to the police. On appeal, defendant argues that (1) the uncharged sexual misconduct was inadmissible propensity evidence and it was substantially more prejudicial than probative, and (2) the threat evidence had little relevance because the threats were made after the abuse was reported and it was therefore unduly prejudicial because it suggested that defendant was a dangerous person. Defendant also asserts that the trial court failed to balance the probative value of the evidence in both instances against the danger of unfair prejudice to defendant. We write only to address whether the trial court conducted the required OEC 403 balancing[1] and, concluding that it did not, we reverse and remand in the limited manner described in State v. Baughman , 361 Or. 386, 411, 393 P.3d 1132 (2017).
"In reviewing a trial court's application of OEC 403, we begin by summarizing all of the evidence and procedure related to the trial court's ruling." State v. Kelley , 293 Or. App. 90, 91, 426 P.3d 226 (2018). The state alleged that defendant committed numerous sexual crimes against his niece, C, and his nephew, A. The charges involving C were for incidents that occurred on a regular basis beginning when C was nine until the day before she turned 18 years old. As for A, the charges were for crimes that occurred beginning when he was 12 years old to the day before he turned 14 years old in 2007, and, on May 25, 2009, when A's mother, Rivera, reported the sexual abuse. Defendant moved in limine to preclude the state from introducing evidence of (1) sexual acts between defendant and C that occurred after C turned 18 years old until she was 22 years old; and (2) sexual misconduct that occurred for the greater-than-two-year period between A's fourteenth birthday and the *330 incident that occurred on May 25, 2009. Defendant also moved to exclude evidence that defendant had made violent threats against one of the victims and against Rivera.
In response to defendant's motion, as to the uncharged sexual misconduct, the state primarily relied on State v. Stephens , 255 Or. App. 37, 296 P.3d 598, rev. den. , 353 Or. 868, 306 P.3d 640 (2013), to argue that the evidence was relevant and admissible under OEC 404(3).[2] In Stephens , the defendant, an elementary school teacher, was convicted of sexual crimes against the victim when the victim was a student in the defendant's fourth to sixth grade classes. Id. at 39, 296 P.3d 598. The victim did not report the abuse until he was 17 years old. Id. We affirmed the trial court's admission of evidence of uncharged incidents of sexual contact with the victim for two reasons. First, in a case "involving charges of sexual abuse of a child where the reporting was significantly delayed, evidence of sexual contact that is not charged is relevant to explain that delay; the existence of a long-term 'relationship' provides relevant context." Id. at 45-46, 296 P.3d 598 (citing State v. Zybach , 308 Or. 96, 100, 775 P.2d 318 (1989) ). Second, "when the uncharged conduct and the charged crimes involve the same child, evidence of the uncharged conduct is relevant 'to demonstrate the sexual predisposition this defendant had for this particular victim, that is, to show the *429 sexual inclination of [the] defendant toward the victim, not that [the defendant] had a character trait or propensity to engage in sexual misconduct generally.' " Id. (quoting State v. McKay , 309 Or. 305, 308, 787 P.2d 479 (1990) ). In this case, the state argued that Stephens was directly "on point" because evidence of "uncharged acts of sexual abuse against the same victim are relevant to demonstrate the sexual predisposition" defendant had for A and C.
Defendant responded as follows:
"A more concerning issue, Your Honor, is the State's desire to introduce uncharged prior bad acts in this case.
*331 And it's particularly concerning because these are prior bad acts which a jury could mistakenly infer is action in conformity, and that is the most dangerous type of evidence that can be introduced to a jury because I think it allows some jurors to no longer have to hold the State to their burden of proof; that is, hold the State to prove the elements of the charges in the indictment but rather to rely on other evidence to support that claim. And I think it's easy for a jury to make that leap if they are hearing about other uncharged evidence.
"For the record, Your Honor, I'm claiming that any evidence of any prior uncharged sexual conduct is not only not probative to the elements of the charges in this case but is extremely prejudicial ."
The court, after reading out loud portions of Stephens , concluded that the
" Stephens case is right on point with the facts in this case. You had two victims, both with long-term incidents involving-or the defendant had long-term incidents with the same two victims. And then the reporting doesn't really come until the mother reports that in 2009. And these incidents had been going on for many years, in the case of [C] and then I guess about a year and a half involving [A].
"So I think those incidents, as set out by the two, [C] and [A], would be admissible for noncharacter purposes set out in Stephens , and so I think they would be admissible."
As for the threat evidence, M, who is the brother of A and C, testified at the in limine hearing that, "after [defendant] had left the residence leading up to [the] trial," defendant threatened "everyone from my family," and had threatened that he would "even kill [his] niece if he had to." C also testified that, after defendant "fled the scene" in 2009, he "threatened to kill" her. To admit evidence of the threats, the state relied on Zybach , in which the Supreme Court held that evidence of the defendant's continuing attempts to persuade the child victim to have sexual intercourse with him after raping her was admissible under OEC 404(3) to explain the nine-month delay between the rape and the victim's report of the rape in order to stop the defendant's unwanted "advances." 308 Or. at 98-100, 775 P.2d 318. In the state's view, because defendant's sexual offenses against A and C
*332 occurred many years before they reported those offenses, under Zybach , the threats were relevant to show why it took a long time to report the charged abuse.
Defendant's counsel responded as follows:
"I think I kind of want to separate a couple of issues. First of all, there is evidence that the alleged victims in this case are afraid of my client. And I think that that's-I wouldn't call that character evidence because I think that's really-it's not a reflection of my client but, really, a reflection of their feelings towards my client. So I don't think that's really character evidence in and of itself. So I don't have a problem with that.
"But when we take a further step and say we're afraid of my client because of threats, that's where we start getting into character evidence of my client. And that's where my concerns start to be raised here, because it is clearly showing evidence with very little probative value to the elements of the charges in this case, but is very prejudicial to my client getting a fair trial because it does appear to portray him in a bad light ."
The trial court ruled that the threats were not character evidence. That is, M and C were
*430 "not saying [defendant] is a violent person and he has a reputation to that. They're saying he threatened [them] if [they] told that he would harm [them] or harm [their] mother. So I don't think that's character evidence.
"I think it would be party opponent admissions and certainly could be perceived as evidence that [defendant] had engaged in that conduct. So I certainly think it would be relevant evidence.
"So I think the statements of the threatened harm if they told, and then [A] also said there was one occasion [defendant] threatened physical harm to get [A] to engage in anal sex, that would be relevant as well. I don't think that's character evidence, and so those two would be admissible.
"* * * * *
"Certainly, I think the two victims can talk about why they didn't report. I think all of that is admissible under *333 the Zybach case; however, [M] is not a victim, so I'm not seeing the same analysis under Zybach .
"* * * * *
"I'm not seeing how that would independently be relevant under Zybach . And so I think certainly the threat is admissible, the threat to kill. I think that goes to evidence of guilt."
At trial, both A and C testified that defendant sexually abused them for periods of time that were not charged by the state. Specifically, C testified that the sexual contact did not end until she was 22 years old, and her testimony included a description of an incident during that period that was particularly graphic. A testified that he was sexually abused four or five times per month for a period of time leading up to the charged sexual crime that occurred in 2009. M testified that, "because of what happened" during the month that Rivera reported the abuse to police, defendant stated that he wanted to kill C and her daughter and that Rivera would "rue the day."
We reject without discussion defendant's challenges to the relevance and admissibility under OEC 404(3) of the uncharged sexual contact. As we explain below, because the trial court failed to expressly or implicitly weigh the probative value of the evidence against the risk of unfair prejudice to defendant before admitting it, we must reverse and remand for the trial court to reevaluate the probative value of the evidence and balance it against the risk of unfair prejudice. See State v. Mazziotti , 361 Or. 370, 376, 393 P.3d 235 (2017) (remanding for the trial court to determine "the relevant purposes of other acts evidence that the state proffers under OEC 404(3) or OEC 404(4)" and to conduct balancing under OEC 403 ).
We begin with defendant's OEC 403 argument. The state contends that defendant did not preserve that argument: "Although defendant made a clear relevance objection to that evidence, he did not articulate a separate OEC 403 * * * objection to it-an objection that assumes the relevance of evidence but asks for its exclusion on the ground that 'its probative value is substantially outweighed by the danger of unfair prejudice.' " (Quoting OEC 403.) The state adds that *334 defendant's assertion that the evidence was "extremely prejudicial" was part of his relevance objection, i.e. , he was arguing that the disputed evidence was potentially dangerous and prejudicial character evidence. We disagree with that reading of the record.
We recently addressed, and rejected, a similar preservation argument in Kelley , 293 Or. App. at 96, 426 P.3d 226. In that decision, we concluded that,
"[a]lthough defendant did not expressly refer to OEC 403 or request balancing, such an explicit reference is not required if the circumstances otherwise suffice to place the court and opposing parties on notice of defendant's contention that any probative value was outweighed by the risk of unfair prejudice. See State v. Walker , 350 Or. 540, 552, 258 P.3d 1228 (2011) ('The appropriate focus * * * is [on] whether a party has given opponents and the trial court enough information to be able to understand the contention and to fairly respond to it.'); Peeples v. Lampert , 345 Or. 209, 220, 191 P.3d 637 (2008) (explaining that the touchstone of the preservation requirement is *431 procedural fairness to the parties and the trial court). Here, in addition to challenging the relevance of the evidence, defendant also asserted that it would be 'highly prejudicial.' Under the circumstances, we conclude that that assertion was sufficient to raise a challenge under OEC 403. See, e.g. , State v. Roberts , 291 Or. App. 124, 129 n. 3, 418 P.3d 41 (2018) (holding that the defendant had adequately preserved OEC 403 objection even though his argument to trial court primarily focused on relevance and spoke little of prejudice, where he asserted that the evidence would be 'extremely prejudicial')."
Id. at 97, 426 P.3d 226.[3] In this case, as to the uncharged sexual conduct, defendant asserted that "any evidence of any prior uncharged sexual conduct is not only not probative to the elements of the charges in this case but is extremely prejudicial ." As to the threat evidence, defendant asserted that that evidence concerned him because it had "very little probative value to the elements of the charges in this case, but is very *335 prejudicial to my client getting a fair trial because it does appear to portray him in a bad light." In both instances, those assertions-under the circumstances-were sufficient to raise a challenge under OEC 403. That is true notwithstanding the fact that, as the state points out, defendant's OEC 403 argument was raised with his relevance and OEC 404(3) arguments. That is, once defendant asserted an OEC 403 challenge, the court had to conduct the balancing required under that rule. See Mazziotti , 361 Or. at 374, 393 P.3d 235 (the trial court must conduct balancing under OEC 403"when a defendant objects to other acts evidence that is relevant for a nonpropensity purpose under OEC 404(3)").
Turning to defendant's argument that the trial court did not conduct OEC 403 balancing, we first point out that the Supreme Court very recently addressed, in State v. Anderson , 363 Or. 392, 423 P.3d 43 (2018), the extent to which a trial court must sufficiently explain the basis for its ruling. In Anderson , the parties at trial contested the admissibility of a booking video showing the defendant in custody, which the state sought to introduce in order to establish the identity of the defendant as the person captured in a video of a person withdrawing money from another person's bank account. 363 Or. at 395-96, 423 P.3d 43. Defendant objected to the booking video's admission on the ground that showing the defendant's custodial status was "too prejudicial" compared to its relevance, whereas the state argued that the video was prejudicial, but not overly so, given its high probative value. The trial court stated that it wanted to view the booking video to help it decide "the balancing issue," did so (twice), and then overruled the defendant's objection to the video's admission, noting simply that it was "relevant." Id. at 398-99, 423 P.3d 43. The defendant argued, relying on State v. Mayfield , 302 Or. 631, 733 P.2d 438 (1987), that the trial court should have provided a more complete explanation of its ruling.
The Supreme Court noted that Mayfield "provides valuable guidance for trial and appellate courts on the meaning and application of OED 403" but that it "did not set out a checklist that trial courts must mechanically tick off on the record or risk reversal." Anderson , 363 Or. at 404, 423 P.3d 43.
*336 "Rather, it identifies the factors a trial court should consider in exercising its discretion under OEC 403, and it recognizes that the record should reflect that the trial court exercised its discretion in resolving the objection. [ Mayfield , 302 Or. at 645, 733 P.2d 438.] Beyond that, however, Mayfield provides little guidance as to how or to what extent the record should reflect the trial court's exercise of discretion."
Id. Stating that " Mayfield does not provide a benchmark for measuring the sufficiency of a trial court's explanation of its OEC 403 ruling," the court turned to later cases to conclude that "a court will make a sufficient record under Mayfield if the trial court's ruling, considered in light of the parties'
*432 arguments, demonstrates that the court balanced the appropriate considerations." Id. at 406, 423 P.3d 43 (citing State v. Turnidge (S059155) , 359 Or. 364, 374 P.3d 853 (2016) ). With that in mind, the court held that the record was sufficient to determine that the trial court had "balanced the probative value of the booking video against the danger of unfair prejudice" given that (1) the parties "fairly exhausted the subject" of the video's prejudicial effect and (2) the trial court viewed the booking video twice after asking to do so to " 'help [it] decide the balancing issue.' " Id. at 408, 423 P.3d 43. The court also noted that the record was sufficient to reflect the trial court's balancing "particularly in light of defendant's failure to raise any issue at trial regarding the sufficiency of the court's explanation of its ruling." Id. at 409, 423 P.3d 43.
By contrast, in this case, we conclude that the record is insufficient to determine that the trial court conducted the requisite OEC 403 balancing. Although defendant raised the unfairly prejudicial effect of the evidence of uncharged sexual contact and threats-namely, the risk that the jury would use that evidence to convict defendant on the ground that he was a bad person, rather than on proof that he committed the charged conduct-the state focused exclusively on that evidence's probative value, primarily relying on Stephens and Zybach (neither of which addressed OEC 403 balancing), and never addressed the risk of unfair prejudice from that evidence. Likewise, the record shows that the trial court's ruling reflected the state's argument, which concerned only the evidence's probative value. Unlike Anderson , where the trial court specifically indicated an *337 intention to view the disputed evidence in order to conduct OEC 403 balancing, the trial court here evinced no such intention; the record does not suggest that its ruling went beyond relevance. The record here lacks any indication that the court weighed the probative value of the contested evidence against its prejudicial effect.
We further conclude that the admission of the evidence was not harmless. See State v. Sewell , 222 Or. App. 423, 430, 193 P.3d 1046 (2008), adh'd to on recons. , 225 Or. App. 296, 201 P.3d 918, rev. den. , 346 Or. 258, 210 P.3d 906 (2009) ("Because a potential effect of the challenged evidence involved precisely the type of risk that compliance with the requirements of OEC 403 was designed to ameliorate, we cannot say there is little likelihood that the erroneous admission of the evidence affected the jury's verdict.").
Therefore, consistently with Baughman , we remand to the trial court to conduct balancing under OEC 403.
Reversed and remanded.

OEC 403 provides, as relevant, that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

OEC 404(3) provides:
"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

We also recognized that the Supreme Court "has not yet addressed the question 'whether, in addition to objecting to the admission of [prior acts] evidence, a party also must explicitly seek balancing under OEC 403 ' to raise an OEC 403 issue on appeal." Kelley , 293 Or. App. at 97, 426 P.3d 226 (quoting Baughman , 361 Or. at 404 n. 9, 393 P.3d 1132 ).